**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

DR. DONALD RAGGIO
DR. CHRIS RAGGIO                                                    **PLAINTIFFS**

**V.**                                                    **CAUSE NO. 3:19-cv-00022**

MTGOX, Inc., a Delaware corporation;
CODE COLLECTIVE, LLC, a New York limited liability company;
JED McCALEB, an individual                                **DEFENDANTS**

---

**JED MCCALEB AND CODE COLLECTIVE, LLC'S MEMORANDUM IN
SUPPORT OF RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**

---

Plaintiffs brought this case in 2014, and it became removable for the first time in 2018 because of two events. First, the meteoric rise in the value of bitcoin caused the Japanese Bankruptcy Court to dismiss the MTGOX liquidation proceedings and initiate a new rehabilitation proceeding. Second, Plaintiffs filed a proof of claim in the MTGOX rehabilitation proceeding *for the first time* in October 2018, claiming they are entitled to the same relief they seek in this case: recovery of 9,406.33 bitcoins allegedly stolen from their MTGOX account. As the cases cited in this brief establish, these two events created bankruptcy-related jurisdiction under 28 U.S.C. § 1452(a) and 28 U.S.C. § 1334(b).

Plaintiffs simultaneously maintain two inconsistent premises: (1) that this case is not bankruptcy-related, and (2) that removal is untimely because it was bankruptcy-related in 2014 when the MTGOX liquidation proceeding was filed. But if the claims are not related now, the case was not removable as bankruptcy-related in 2014. In fact, Defendants' removal is both jurisdictionally proper and timely. Defendants removed this case within ninety days of the "order for relief"—the Texas Bankruptcy Court's December 11, 2018 order recognizing the newly-

initiated rehabilitation proceeding. *See* Fed. R. Bankr. P. 9027(a)(2). Also, Defendants removed this case within thirty days of receipt of both an "order" and an "other paper" showing the case was removable under bankruptcy-related jurisdiction because the December 11, 2018 order recognizing the liquidation proceeding constitutes an "order" and the Plaintiffs' Proof of Claim constitutes an "other paper." *See* 28 U.S.C. § 1446(b)(3). Each of these bases independently satisfy the timeliness requirement.

Plaintiffs' Motion to Remand is the latest move in their four-year campaign of equivocating about whether MTGOX is responsible for their loss in order to focus blame on McCaleb and avoid bankruptcy jurisdiction. When this case was originally filed in 2014, Plaintiffs chose not to serve any of the MTGOX entities they sued to avoid triggering the automatic stay. Those entities were in liquidation in Japan, but Plaintiffs declined to file a claim. Then, four years later, the prospects for recovering from MTGOX unexpectedly changed as the value of bitcoins exploded. This appreciation made the MTGOX estate flush with assets, and Plaintiffs' Japanese counsel successfully moved the Japanese Bankruptcy Court to initiate a new involuntary rehabilitation proceeding in June 2018. The rehabilitation proceeding created a new window for Plaintiffs to file a claim. At the same time, McCaleb's October 2018 Motion for Partial Summary Judgment argued that Plaintiffs had failed to mitigate damages. Plaintiffs responded by filing a Proof of Claim eleven days later and referencing it in their opposition brief as evidence of mitigation. Plaintiffs then withheld the Proof of Claim from McCaleb until they were faced with the threat of a motion to compel. McCaleb removed the day after receiving the Proof of Claim.

Plaintiffs created the new connection between their claims in this case to the MTGOX bankruptcy just recently, yet their remand motion would deny McCaleb his corresponding right to

remove less than a month later. Plaintiffs cannot be rewarded for this gamesmanship and the motion must be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

### MTGOX and Bitcoin generally

Jed McCaleb is a California-based software developer and entrepreneur. In 2010, McCaleb and his company, Code Collective, LLC (collectively "McCaleb") created the MTGOX bitcoin exchange. *See* Plaintiffs' Original Complaint, attached as Exhibit A, at ¶¶ 11-13; *see also*, Affidavit of Jed McCaleb (6/29/2016), attached as Exhibit B, at ¶¶ 2-3. Bitcoins are a form of digital currency (or "cryptocurrency") lacking ties to any centralized bank. *Id.* The MTGOX bitcoin exchange was an online platform that allowed its users to buy and sell bitcoins with each other. *Id.* At one point in time the MTGOX exchange was the world's largest online bitcoin exchange. *See* "Apparent Theft at Mt. Gox Shakes Bitcoins World," New York Times (2/25/2014), attached as Exhibit C. MTGOX's rise and fall has been covered by periodicals around the globe. *Id.*

### The theft of Plaintiffs' bitcoins and its aftermath

In December 2010, Plaintiffs, Donald and Chris Raggio, opened an account on the MTGOX exchange, deposited $5,000, and purchased thousands of bitcoins from other users on the exchange. *See* Affidavit of Chris Raggio (11/1/2018), attached as Exhibit D, at ¶ 3; *see also* Collection of E-mails, attached as Exhibit E, at 2-5. Plaintiffs allege that from January 7 to January 9, 2011, someone stole 9,406.33 bitcoins from their MTGOX account. *See* Exhibit D, at ¶ 6. At the time of the alleged theft, the value of those bitcoins was approximately $3,100 ($0.33 per bitcoin). *See* Exhibit B, at ¶ 6; *see also* Historical Bitcoin Pricing Charts from CoinDesk.com,

attached as Exhibit F. The Raggios noticed the alleged theft on January 9, 2011 and immediately informed McCaleb. *See* Exhibit D, at ¶ 6; *see also* Exhibit B, at ¶ 7; Exhibit E, at 6. After an investigation, McCaleb believed he might have identified the MTGOX account of the person responsible for the unauthorized withdrawals and froze that user's account pending further investigation. *See* Exhibit D, at ¶¶ 7-9; *see also* Exhibit E, at 25.

McCaleb sold the MTGOX exchange on February 11, 2011 to Mark Karpeles and Tibanne KK, a Japanese corporation. *See* Exhibit B, at ¶¶ 8-10; *see* Exhibit D, at ¶¶ 11-15. The Raggios began corresponding with Karpeles regarding the recovery of their allegedly stolen bitcoins. *See* Exhibit D, at ¶¶ 11-15; *see also* Exhibit E, at 29-31-34-37. The Raggios later acknowledged that Karpeles had taken over the investigation and "[i]t's up to Mark [Karpeles] to see if we are able to recover the stolen BTC." *See* Exhibit E, at 28.

On December 21, 2011, the Raggios e-mailed McCaleb, updating him on the investigation and acknowledging that he was not responsible for "mak[ing] things right":

> I'm not asking you to intervene on my or my father's behalf. Mark is the owner of Mt Gox now. It's his call whether he wants to make things right with us as he did with Bitomat. My father and I appreciate everything you did to investigate and pursue the thief. You didn't have to go to the lengths you went to for us. We thank you.

*See* Exhibit E, at 38-39. The Raggios continued to correspond with MTGOX's owner, Mark Karpeles. *See* Exhibit E, at 29-31-34-37. According to the Raggios, Karpeles told them in March 2012 that he was not responsible for recovering their bitcoins because he only purchased MTGOX's assets not its liabilities. *See* Exhibit D, at ¶ 15. At the time, the market value of bitcoin was $5.43, at which price the allegedly stolen bitcoins were worth approximately $51,000. *See* Exhibit F.

4

### *The Original Complaint*

On March 5, 2014—more than three years after the theft and after the value of the stolen bitcoins climbed to more than $6 million—Plaintiffs filed suit in Hinds County Circuit Court in Jackson, Mississippi. *See* Exhibits A and E. Plaintiffs sued MTGOX, Inc., MtGox KK, Tibanne KK, Mutum Sigillum, LLC, Code Collective, LLC, Jed McCaleb, Mark Karpeles, and several John Doe defendants seeking recovery of 9,406.33 bitcoins they claim were stolen from their MTGOX account. *See* Exhibit A, at ¶¶ 1-9, 16, 23. Plaintiffs made claims for breach of contract, breach of fiduciary duty, conversion, fraud, conspiracy, account stated, constructive trust, and more. *See generally* Exhibit A.

### *MTGOX declares bankruptcy*

Four days after this lawsuit was filed, MtGox Co., LTD. (a/k/a MtGox KK) filed a Chapter 15 bankruptcy petition in the Northern District of Texas Bankruptcy Court (3:14-bk-31229) ("the Texas Bankruptcy") seeking recognition of the civil rehabilitation proceeding it had recently initiated in Japan. *See* First Verified Petition for Recognition (3/9/2014), attached as Exhibit G, at ¶¶ 9-15. Shortly thereafter the Japanese Bankruptcy Court dismissed the civil rehabilitation proceeding and initiated a liquidation proceeding ("the Japanese Liquidation Proceeding") because rehabilitation was not possible. *See* Declaration in Support of Amended Verified Petition for Recognition (5/23/2014), attached as Exhibit H, at ¶¶ 41-47. On June 19, 2014 the Northern District of Texas Bankruptcy Court entered an order of recognition identifying the Japanese Liquidation Proceeding as the operative "main" proceeding for the Texas Bankruptcy. *See* First Recognition Order, attached as Exhibit I, at ¶ 2. At that time Plaintiffs had not served McCaleb with the original complaint. *See* Certificate of Service on Jed McCaleb, attached as Exhibit J

(identifying August 21, 2014 as date of service). Plaintiffs never served MtGox KK, Tibanne KK, Mutum Sigillum, LLC, or Mark Karpeles and did <u>not</u> file a claim in any bankruptcy proceeding involving these parties. *See* Plaintiffs' Response to Second Set of Requests for Admissions (8/3/2017), attached as Exhibit K, at ¶¶ 1-2.

***The Amended Complaint***

In September 2018, Plaintiffs amended their complaint. *See* First Amended Complaint, attached as Exhibit L. The amended complaint dropped all defendants except McCaleb, Code Collective, and MTGOX, Inc. (a defunct U.S.-based subsidiary of MtGox Co., Ltd.). *See* Exhibit L, at ¶¶ 2-4. Plaintiffs' amended complaint set out extensive claims relating to the conduct of Karpeles and MTGOX in the years after McCaleb sold the exchange. *See generally* Exhibit L. For example, the amended complaint included allegations that an investment contract existed between Plaintiffs and MTGOX entitling them to delivery of 9,406.33 bitcoins. *See* Exhibit L, at ¶¶ 48-54 (UCC claim against "securities intermediary" requires investment contract). Plaintiffs also claimed MTGOX was operated "without any regard for corporate formalities, frustrating the contractual expectations of Plaintiffs and other buyers, for the purpose of their fraudulent and wrongful misconduct," giving rise to piercing MTGOX's corporate veil. *See* Exhibit L, at ¶¶ 27, 102-103. And Plaintiffs alleged that MTGOX "converted . . . [the] bitcoins for [its] own use . . . by refusing to return all of the bitcoins." *See* Exhibit L, at ¶ 75.

As for Karpeles, the owner of MTGOX, Plaintiffs claimed he falsely led them to believe the bitcoins would be returned. *See* Exhibit L, at ¶ 22. Moreover, Plaintiffs alleged Karpeles was "aware of [MTGOX's] insolvency" but did not "notify the MTGOX users ." *See* Exhibit L, at ¶ 27. Plaintiffs claimed Karpeles and MTGOX—together with McCaleb—conspired to deprive the

6

Raggios of their bitcoins. *See* Exhibit L, at ¶ 62. In short, the theory of the Amended Complaint is that the MTGOX exchange was "a scam operated for the exclusive benefit" of McCaleb, Karpeles, and others. *See* Exhibit L, at ¶ 103.

Plaintiffs now seek to recover more than $165 million based on their lost $3,000 investment. *See* Exhibit D, at ¶¶ 11-15

### *MTGOX second bankruptcy (Rehabilitation) initiated*

By the time Plaintiffs filed the amended complaint, the meteoric rise in the value of bitcoins had reversed MTGOX's fortunes, making the debtor flush with assets. *See* Motion for Modification, attached as Exhibit M, at ¶¶ 18-19. At one point a single bitcoin was worth more than $11,000. *See* Exhibit E. As a result, Plaintiffs' Japanese counsel (Nishimura & Asahi) asked the Japanese Bankruptcy Court to force MTGOX into a new civil rehabilitation proceeding for the benefit of all MTGOX creditors. *See* Press Release Regarding Motion to Initiate Involuntary Rehabilitation Proceedings, attached as Exhibit N (filed by Nishimura & Asahi); *see also* Plaintiffs' Proof of Claim, attached as Exhibit O, at 1, 14 (identifying Nishimura & Asahi as Plaintiffs' Japanese counsel).

In June 2018, the Japanese Bankruptcy Court ended the Japanese Liquidation Proceeding and granted the request to initiate civil rehabilitation in its place ("the Japanese Rehabilitation Proceeding"), with hopes of paying out all MTGOX creditors. *See* Exhibit M, at ¶¶ 22, 25. This new proceeding forced all previous creditors to file new proofs of claim and opened a new window for parties like the Raggios to file claims for the first time. *See* Announcement of Commencement of Civil Rehabilitation Proceedings (English Translation), attached as Exhibit P, at 6. On October 26, 2018, the trustee in the Texas Bankruptcy filed a motion to abandon recognition of the Japanese

Liquidation Proceeding and to recognize the new Japanese Rehabilitation Proceeding as the operative "main" proceeding in the Texas Bankruptcy. *See* Exhibit M, at ¶ 2. On December 11, 2018, this Motion was granted, and an order of recognition was entered. *See* Second Recognition Order (12/11/2018), attached as Exhibit Q.

### Motion for Partial Summary Judgment, the Proof of Claim, and Removal

On October 5, 2018, McCaleb filed a Motion for Partial Summary Judgment seeking to limit Plaintiffs' available damages based on their failure to mitigate damages by purchasing cover bitcoins and/or filing a claim in the MTGOX bankruptcy. *See* Motion for Partial Summary Judgment, attached as Exhibit R, at ¶¶ 4, 13. Eleven days later, on October 16, 2018, Plaintiffs filed a claim in the MTGOX bankruptcy. *See* Exhibit D, at ¶ 19. Plaintiffs disclosed this fact for the first time on November 1, 2018, when they filed their opposition brief. *Id*. Although McCaleb had propounded discovery in August 2017 seeking production of any bankruptcy claims, Plaintiffs did not supplement that discovery by producing a copy of the Proof of Claim until after McCaleb threatened to file a Motion to Compel on January 3, 2019. *See* McCaleb's Sixth Requests for Production of Documents (8/1/2017), attached as Exhibit S, at 1-2; *see also* McCaleb's Good Faith Letter, attached as Exhibit T; Correspondence Transmitting Proof of Claim, attached as Exhibit U. In the Proof of Claim, Plaintiffs identify this case as a "[p]ending lawsuit or administrative proceeding **related to** the rehabilitation claim," and Plaintiffs sought recovery of 9,406.33 bitcoins—the exact sum they seek from McCaleb here. *See* Exhibit O, at 3, 5 (emphasis added).

One day after receiving Plaintiffs' Proof of Claim and twenty-nine days after the Texas Bankruptcy Court first recognized the new Japanese Rehabilitation Proceeding in which that Proof

of Claims was filed, McCaleb removed this case to federal court based on bankruptcy-related jurisdiction. *See* Notice of Removal (Rec. Doc. 1).

## LEGAL ARGUMENT AND ANALYSIS

Plaintiffs' Motion to Remand argues there are three reasons this case should be remanded: (1) the claims are not related to the bankruptcy because it involves non-debtor third parties; (2) McCaleb's removal was untimely; and, (3) McCaleb failed to obtain MTGOX, Inc.'s consent to removal. Plaintiffs' arguments are out of step with the facts of this case and the applicable law. Remand therefore must be denied.

## I.   THIS CASE IS RELATED TO THE MTGOX BANKRUPTCY

Plaintiffs contend this Court lacks jurisdiction because the claims are not bankruptcy related. This position is directly contradicted by Plaintiffs' own statements in their Proof of Claim with the MTGOX bankruptcy and it is inconsistent with the law. When Plaintiffs filed their Proof of Claim in the Japanese Rehabilitation Proceeding seeking to recover the same 9,406.33 bitcoins from the MTGOX bankruptcy estate, they linked the MTGOX bankruptcy to this lawsuit by making it so that the outcome of their claims in one proceeding necessarily affects the other.

### a.   *Plaintiffs have previously contended their claim is bankruptcy related*

Just four months ago, Plaintiffs contended this lawsuit is related to the MTGOX bankruptcy and therefore they should be estopped from denying it now. Plaintiffs' Proof of Claim in the Japanese Rehabilitation Proceeding identifies this litigation as a "pending lawsuit" that is "related to" the Japanese Rehabilitation Proceeding. *See* Exhibit O, at 5. The doctrine of judicial estoppel exists "to prevent parties from playing fast and loose with the courts to suit the exigencies of self-interest." *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988). Courts are empowered to

"protect the integrity of the judicial process" by using judicial estoppel. *See Brandon*, 858 F.2d at 268. Here, Plaintiffs are simultaneously seeking the same 9,406.33 bitcoins from both McCaleb and the MTGOX bankruptcy estate. *See generally* Exhibit L and Exhibit O. Plaintiffs referred to this case as related in the bankruptcy proceeding, while in this motion—where relatedness does not serve their interest—they contend they are not related. Plaintiffs' argument should be rejected on this basis alone.

> **b. Because Plaintiffs seek recovery of the same 9,406.33 bitcoins from both McCaleb and the MTGOX estate, the outcome will "conceivably" impact the MTGOX estate**

The bar for establishing bankruptcy-related jurisdiction is extremely low. The United States Supreme Court explained that a matter is related when "the outcome of that proceeding **could conceivably have any effect** on the estate being administered." *See Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n. 6 (1995) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d. Cir. 1984)) (emphasis added); *see also Matter of Wood*, 825 F.2d 90 (5th Cir. 1987) (applying *Pacor* test). Elaborating on this standard, the Court stated "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively)." *Id*. Therefore, McCaleb need only show that this case "could conceivably" have an impact of some sort on the MTGOX estate's "rights, liabilities, options, or freedom of action." *Id.*

As explained above, Plaintiffs seek the exact same 9,406.33 bitcoins from two sources: (1) McCaleb, through this lawsuit, and (2) the MTGOX estate, through the Japanese Rehabilitation Proceeding. Of course, the outcome of one proceeding will necessarily affect the other now that Plaintiffs have filed a Proof of Claim. If Plaintiffs recover 9,406.33 bitcoins from McCaleb, it

could moot Plaintiffs' claim against the MTGOX estate, thereby reducing its liabilities. As the Supreme Court explained in *Celotex*, it does not matter whether the effect on the estate is positive or negative so long as there is the potential for the estate to be altered. *See Celotex Corp.*, 514 U.S. at 308 n. 6. Elimination of a claim on the estate affects the liabilities of the estate. Therefore, this case is clearly related to the MTGOX bankruptcy, giving this court jurisdiction over the claims.

The parties, facts, allegations, and relief in these two actions are so deeply intertwined that it would be impossible to set out every "conceivable" way in which the MTGOX estate could be affected. While the scenario above is the most obvious way this case is related to the MTGOX bankruptcy, other examples also illustrate how this litigation could conceivably have an effect on the MTGOX estate:

- **<u>Specific Performance</u>** – Plaintiffs seek specific performance from McCaleb and MTGOX, Inc. to compel delivery of the 9,406.33 bitcoins stolen from their account in 2011. This is based, in part, on Plaintiffs' claim that the MTGOX entities breached an investment contract with them. Plaintiffs claim these bitcoins are held by the MTGOX estate in association with frozen and suspicious accounts. *See* Exhibit A, at ¶ 23 ("those bitcoins are still under the care and control" of MTGOX); *see also*, Exhibit E, at 31. Specific performance ordering delivery of these bitcoins would necessarily affect the estate (while simultaneously violating the automatic stay).

- **<u>Piercing the Corporate Veil</u>** – Plaintiffs' amended complaint makes claims against MTGOX, Inc. for "piercing the corporate veil." *See* Exhibit K, at ¶ 102-103. Because MTGOX, Inc. is a defunct subsidiary of MtGox KK, these claims could conceivably impact the MTGOX bankruptcy estate. *See* Delaware Secretary of State Documents, attached as Exhibit V; *see also*, Green Complaint, attached as Exhibit W, at ¶¶ 7-10 (MtGox Inc. is a subsidiary of MtGox KK and Tibanne KK).

- **<u>Application of Defenses</u>** – If McCaleb prevails on any one of an array of defenses—such as statute of limitations—Plaintiffs' claims against the estate could conceivably be eliminated on the basis of *res judicata*.

- **Settlement** – If McCaleb settles the claim or is found liable for some amount less than the value of 9,406.33 bitcoins, then Plaintiffs' bankruptcy claim could be reduced. The same is true if McCaleb successfully obtains a ruling that would limit Plaintiffs' damages due to their failure to cover and/or mitigate their alleged losses. Because Plaintiffs are attempting to recover the **same** assets from two sources, these two claims are directly linked. Recovery from one source necessarily impacts the liabilities of the other source.

- **Indemnity** – If Plaintiffs obtain a judgment against McCaleb, he is entitled to indemnity from the MTGOX estate. McCaleb has made an indemnity demand on the MTGOX estate that corresponds to Plaintiffs' Proof of Claim. *See* McCaleb Indemnity Demand, attached as Exhibit X. As a result, the outcome of this litigation will necessarily impact the MTGOX estate. Plaintiffs' own case law from this court—*Berry*, 316 B.R. at 886—establishes that litigation is bankruptcy related if a party is owed indemnity by the debtor.

- **Transfer of Liabilities** – Plaintiffs argue there is a dispute as to whether the liabilities for the alleged theft of the Raggios' bitcoins transferred to Karpeles and the MTGOX entities after the sale. *See* Exhibit L, at ¶ 24. A court must resolve this issue and it will necessarily impact the liabilities of the estate one way or another.

These examples of how in this case "could conceivably" alter the MTGOX estate's "rights, liabilities, options, or freedom of action (either positively or negatively)" establish that jurisdiction exists here. Plaintiffs state that "[t]hose cases in which courts have upheld 'related to' jurisdiction over third-party actions do so because the subject of the third-party dispute is property of the estate, or because the dispute over the asset would have an effect on the estate." *See* Plaintiffs' Memo in Support of Motion to Remand (Rec. Doc. 8), at 10 (quoting *Matter of Zale Corp.*, 62 F.3d 746, 753 (5th Cir. 1995)). This is precisely the case here.

### c. *Plaintiffs' arguments require them to misrepresent the nature of their claims*

Although Plaintiffs argue that their claims relate only to McCaleb's conduct and not MTGOX, that is demonstrably false. *See, e.g.*, Plaintiffs' Memo in Support of Motion to Remand (Rec. Doc. 8), at 12 ("it is Jed McCaleb's and Code Collective's actions and misrepresentations—

wholly exclusive from MtGox Co., Ltd.—that form the basis of this suit."). To the contrary, Plaintiffs' conduct during the past eight years establishes that MTGOX's conduct and its assets are central to Plaintiffs' claims.

In 2011, Plaintiffs regularly corresponded with Karpeles regarding recovery of their bitcoins and now claim he deliberately misled them into believing he had "put [their bitcoins] into safekeeping" and that those bitcoins "would be delivered as soon as he obtained legal authority." *See* Plaintiffs' Answer to Petition for Permission to Appeal, attached as Exhibit Y, at 6. In 2012, Plaintiffs hired Japanese lawyers to investigate MTGOX and its owners with respect to the stolen bitcoins. *See* Exhibit A, at ¶ 22. In 2014, Plaintiffs filed suit against MTGOX and its parents, subsidiaries, and individual owner based on the theft of 9,406.33 bitcoins from their account on the MTGOX exchange. *See* Exhibit A. In 2018, Plaintiffs' amended complaint maintained the MTGOX exchange was a "fraud," an ongoing "conspiracy," and "a scam operated for the exclusive benefit" of McCaleb, Karpeles, and others. *See* Exhibit L, at ¶¶ 61-64, 92-93, 103. In fact, in that amended complaint Plaintiffs' allegations ***against McCaleb*** are based on the fact that he allegedly "play[ed] an integral role in MTGOX operations long after the sale." *See* Exhibit L, at ¶ 18 (emphasis added). Later in 2018 Plaintiffs filed a Proof of Claim in the Japanese Rehabilitation Proceeding seeking from MTGOX the same 9,406.33 bitcoins they seek from McCaleb in this case. *See* Exhibit O.

Throughout the past eight years, Plaintiffs have consistently alleged negligent, fraudulent, and/or willful conduct on the part of MTGOX entities after McCaleb sold the exchange in 2011. Even the claims against McCaleb are based on his alleged post-sale work for MTGOX. To claim now that "it is Jed McCaleb's and Code Collective's actions and misrepresentations—wholly

exclusive from MtGox Co., Ltd.—that form the basis of this suit" is a litigation-driven misrepresentation. *See* Plaintiffs' Memo in Support of Motion to Remand (Rec. Doc. 8), at 12. Plaintiffs want to pursue claims against MTGOX in bankruptcy court and keep the same claims against McCaleb in state court by pretending there is no nexus between the two. But the claims themselves, not Plaintiffs' self-serving characterizations of the claims, show the centrality of MTGOX to this lawsuit.

### d.   *When Plaintiffs filed their Proof of Claim, it created bankruptcy-related jurisdiction*

The filing of the Proof of Claim in the Japanese Rehabilitation Proceeding (and its subsequent recognition in the U.S. bankruptcy courts) created bankruptcy-related jurisdiction in this case for the first time. Given that Plaintiffs seek to recover the same 9,406.33 bitcoins from both McCaleb and the MTGOX estate, it is now beyond question that this litigation is related to the bankruptcy. Plaintiffs are, at most, entitled to the 9,406.33 bitcoins they lost and, therefore, any recovery against either McCaleb or the MTGOX estate will be inextricably linked to the remaining claim against the other. Otherwise, to accept Plaintiffs' position would be to condone a double recovery.

Plaintiffs contend that this case is not bankruptcy related because it "involves exclusively non-debtor third parties." *See* Plaintiffs' Memo in Support of Motion to Remand (Rec. Doc. 8), at 9. The Supreme Court in *Celotex* rejected a bright-line rule like the one proposed by Plaintiffs here, stating that "the proceeding need not necessarily be against the debtor or against the debtor's property" and that bankruptcy-related jurisdiction extends beyond "more than simple proceedings involving the property of the debtor or the estate." *See Celotex Corp.*, 514 U.S. at 308 n. 6. Nevertheless, before filing their Proof of Claim, Plaintiffs argument had some weight as it was

14

difficult to see how the lawsuit would impact the rights and liabilities of the MTGOX bankruptcy estate absent a viable claim in the Japanese Liquidation Proceeding.

But the Proof of Claim made it undeniable that this lawsuit was bankruptcy-related. Most importantly gave Plaintiffs the potential right to recover from the MTGOX bankruptcy estate. Also, the "res" of the two cases is now **identical**, removing the shroud of uncertainty. None of the cases Plaintiffs cite involve a plaintiff making simultaneous claims against a debtor and a non-debtor for the same asset. Likewise, none of those cases involve a proof of claim filed in an active bankruptcy proceeding. In particular, the only case from this Circuit that Plaintiffs rely on is *Coward v. AC and S, Inc.*, 91 F.App'x 919, 923 (5th Cir. 2004)—an unpublished opinion bearing little resemblance to this case and carrying no precedential value. *See* 5th Cir. R. 47.5.4. In *Coward*, the Fifth Circuit addressed the situation in which there was no claim made on the bankruptcy estate at all. *Id.*, at 923-24. This case, on the other hand, is not one where the court is presented with "a precursor to a claim against the debtor"—instead, Plaintiffs have made an identical claim against the debtor itself. *Id.* Because Plaintiffs are "litigant[s] [who] ha[ve] brought a direct claim" against the debtor, even *Coward* supports jurisdiction here. *Id.*

## II.    REMOVAL WAS TIMELY

Plaintiffs' next attack on McCaleb's removal is timeliness. Plaintiffs contend McCaleb should have removed in 2014 when the Japanese Liquidation Proceeding was first recognized. This argument is both disingenuous and irrelevant. Three independent bases support the timeliness of removal here: (1) Rule 9027, (2) Section 1446(b)(3), and (3) Rule 9006(b). When the Texas Bankruptcy Court entered the Second Recognition Order on December 11, 2018 recognizing for the first time a proceeding in which Plaintiffs had filed a Proof of Claim, a window for removal

15

was opened. For Plaintiffs to contend that the removal is untimely because McCaleb did not remove it earlier is inconsistent with their position that this case is not (and never was) removable because it is not bankruptcy-related. Plaintiffs' timeliness arguments underscore their attempt to game the system by pursuing claims against the MTGOX bankruptcy estate while avoiding its connection to this lawsuit.

> ### a. The Japanese Rehabilitation Proceeding is either an entirely new proceeding or a conversion, both of which constitute a new order for relief under Rule 9027(a)(2)

Federal Rule of Bankruptcy Procedure 9027(a)(2)(A) allows removal "within . . . 90 days after the order for relief" is entered in a bankruptcy case. There is no dispute that McCaleb removed the case within 90 days of the Texas Bankruptcy Court's December 11, 2018 recognition of the Japanese Rehabilitation Proceeding. The only question raised by Plaintiffs is whether the recognition of the Japanese Rehabilitation Proceeding constituted an order for relief under the Bankruptcy Code. *See* Plaintiffs' Memo in Support of Motion to Remand (Rec. Doc. 8), at 2-4. The answer is that it did: the recognition of the Japanese Rehabilitation Proceeding is either a new proceeding or a conversion, both of which are orders for relief.

> ### i. The recognition of a foreign proceeding is an order for relief

Plaintiffs admit that an order recognizing a foreign proceeding is an "order for relief" under the Bankruptcy Code. *See* Plaintiffs' Memo in Support of Motion to Remand (Rec. Doc. 8), at 2-3. As the Southern District of New York explained in *In re Fairfield Sentry Ltd.*, 452 B.R. 52 (S.D.N.Y. 2011), "[t]he first step to obtaining relief under chapter 15 . . . is receiving recognition of the foreign proceeding." *Id.*, at 63 (quoting *In re SPhinX, Ltd.*, 351 B.R. 103, 115

(Bankr.S.D.N.Y. 2006)). Therefore, "the Recognition Date is properly deemed the date of the order for relief." *Id.*

      ii.   <u>The Japanese Rehabilitation Proceeding is an entirely new proceeding, and its recognition is, therefore, a new order for relief</u>

While "the Recognition Date is properly deemed the date of the order for relief," Plaintiffs maintain that McCaleb should have removed the case in June 2014 (two months before McCaleb was even served) when the Texas Bankruptcy Court recognized the Japanese Liquidation Proceeding. *See* Plaintiffs' Memo in Support of Motion to Remand (Rec. Doc. 8), at 3. But, the Japanese Rehabilitation Proceeding is an entirely new proceeding, and the order recognizing it is a new order for relief. *See* Exhibit L, at ¶¶ 18-19, 30-31; *see also*, English Translation of Japanese Court Order (Ex. 2 to Motion for Modification), attached as Exhibit Z, at ¶ 1; Exhibit P. When the Japanese Rehabilitation Proceeding was initiated, the entire Japanese bankruptcy process started over. For example, creditors that filed proofs of claim in the Japanese Liquidation Proceeding were required to file new proofs of claim in the Japanese Rehabilitation Proceeding. *See* Exhibit P, at 6. And creditors that had not filed proofs of claim—such as Plaintiffs—were able to file proofs of claim for the first time. *See* Exhibit P, at 2. Plaintiffs' Motion to Remand argues that McCaleb had to remove shortly after recognition of the Japanese Liquidation Proceeding, and so it is based on the wrong order for relief.

An "order for relief" is merely "an adjudication under the Bankruptcy Act" that makes a "determination of the debtor's status in bankruptcy." *See In re HealthTrio, Inc.*, 653 F.3d 1154, 1157 (10th Cir. 2011). The recognition of the Japanese Rehabilitation Proceeding therefore is an order for relief. In its December 11, 2018 Second Recognition Order the Texas Bankruptcy Court stated:

> The Second Rehabilitation Proceeding is recognized, *nunc pro tunc* to June 22, 2018, as a foreign main proceeding pursuant to sections 1517(a) and 1517(b) of the Bankruptcy Code, and all of the effects of recognition as set forth in section 1520 of the Bankruptcy Code shall apply.

*See* Exhibit Q, at ¶ 6. This ruling was based on a finding that the Trustee in the Japanese Rehabilitation Proceeding was "entitled to all relief" provided under the Bankruptcy Code. *See* Exhibit Q, at ¶ M. The Texas Bankruptcy Court further stated that "[t]he First Recognition Order is superseded by this Order" and that the Japanese Liquidation Proceeding "is no longer recognized" as the operative proceeding in the Texas Bankruptcy. *See* Exhibit Q, at ¶¶ 2-3. By conveying "all of the effects of recognition as set forth in section 1520" and providing "all relief" to the Japanese Rehabilitation Proceeding, the Texas Bankruptcy Court manifested a clear intent to enter an "order for relief" as defined in the Bankruptcy Code.

Plaintiffs can cite no case-law that suggests a Chapter 15 modification formally recognizing a new proceeding is not an order for relief. As demonstrated above, the Order carries all the same effects as an order for relief. Plaintiffs resort to an out-of-context quote from the Second Recognition Order where it states that "[n]othing in this Order shall be deemed to affect the validity or enforceability of this Court's prior Orders in this Chapter 15 case, except as set forth in this Order." *See* Plaintiffs' Memo in Support of Motion to Remand (Rec. Doc. 8), at 4. The important language here is "except as set forth in this Order." *See* Exhibit Q, at ¶ 5. This provision is a catch-all protecting the validity of prior orders like those admitting attorneys *pro hac vice* or approving a settlement agreement with the U.S. government. *See generally,* Docket of Texas Bankruptcy Court (3:14-bk-31229), attached as Exhibit AA. The language Plaintiffs quote does

18

not abrogate the Order's new relief relating to the rights and status of the Japanese Rehabilitation Proceeding.

"A central tenet of chapter 15 is the importance of comity in cross-border insolvency proceedings." *In re Rede Energia S.A.*, 515 B.R. 69, 89 (Bankr.S.D.N.Y. 2014). Treating the recognition of the Japanese Rehabilitation Proceeding as a new order for relief is consistent with the principles of Chapter 15 because the Japanese Bankruptcy Court treated this proceeding as a separate, new proceeding that required, among other things, filing of new proofs of claims for all debtors, re-approval of the trustee, and a new window for filing proofs of claims. *See* Exhibit P, at 1, 4, 6.

        iii.    <u>Chapter 15's broad, flexible rules are designed to prevent inequities like those presented here, where Plaintiffs simultaneously seek to exploit the new proceeding's filing window while denying that McCaleb has a corresponding opportunity to remove</u>

Importantly, this new proceeding re-opened the window of time for Plaintiffs' to file a Proof of Claim. *See* Exhibit Z. Plaintiffs took advantage of this new filing window but argue the Court should deny McCaleb a corresponding right to remove. Chapter 15 gives courts "broad, flexible rules to fashion relief" that protects both the parties and the interests of comity. *See In re Rede Energia S.A.*, 515 B.R. at 91. Plaintiffs' narrow interpretation of the Second Recognition Order would undermine these principles by allowing Plaintiffs to exploit differences between the Japanese and U.S. bankruptcy procedures to give themselves recourse to the bankruptcy process while simultaneously denying McCaleb the protections of federal court.

iv.   The balance of the Bankruptcy Code also treats a conversion as a new order for relief

Just as Chapter 15 treats the recognition of the Japanese Rehabilitation Proceeding as a new order for relief, so too does Chapter 11, and the two chapters are *in pari materia* and should be construed together. In contrast to the Japanese Bankruptcy, where the court initiated an entirely new proceeding in order to change the liquidation into a rehabilitation, a U.S. bankruptcy court can simply convert a case from one chapter (Chapter 7 liquidation) to another (Chapter 11 rehabilitation). *See* 11 U.S.C. § 348. If the Court does not find that the Japanese Rehabilitation Proceeding as a new proceeding for Chapter 15 purposes, then it should treat it as a conversion instead. Under the Bankruptcy Code, a conversion from liquidation to rehabilitation is treated as a new order for relief. *See* 11 U.S.C. § 348(a) ("Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief").

The Fifth Circuit has historically read Chapter 15 *in pari materia* with the rest of the Bankruptcy Code. *See, e.g., Firefighters' Retirement System v. Citco Group, Ltd.*, 796 F.3d 520, 527 (5th Cir. 2015). Under the rule of *in pari materia*, statutes that pertain to the same subject "should be construed as if they were one law" and a law bearing on similar subject matter is "entitled to great weight in resolving any ambiguities and doubts." *See Erlenbaugh v. U.S.*, 409 U.S. 239, 243-44 (1972). Pursuant to this rule of interpretation, a modification under Chapter 15 from liquidation to rehabilitation should be read consistent with the other chapters of the Bankruptcy Code that hold a conversion from liquidation to rehabilitation constitutes a new order for relief. *See* 11 U.S.C. § 348(a).

### b.  McCaleb's receipt of the Second Recognition Order and Plaintiffs' Proof of Claim both triggered a separate 30-day window under Section 1446(b)(3)

McCaleb's removal was also timely because it was within thirty days of his "receipt of . . . [an] order or other paper" making the case removable. *See* 28 U.S.C. § 1446(b)(3). McCaleb removed twenty-nine days after the December 11, 2018 order recognizing the Japanese Rehabilitation Proceeding and one day after Plaintiffs gave McCaleb their Proof of Claim in the Japanese Rehabilitation Proceeding. *See* Exhibit Q and Exhibit U. Because MTGOX is now potentially a solvent entity and Plaintiffs have filed a claim against it, these filings made this case related to the MTGOX bankruptcy. *See* Section I, *supra*. At the time the original complaint was filed, no U.S. bankruptcy existed that would make this case removable. Furthermore, as discussed above, prior to the filing of Plaintiffs' Proof of Claim this case was likely not bankruptcy related. *See* Section I(d) *supra*.

Plaintiffs cite several cases applying Rule 9027 in bankruptcy-related removals to the exclusion of § 1446(b)(3). *See* Plaintiffs' Memo in Support of Motion to Remand (Rec. Doc. 8), at 4-5. While McCaleb agrees that Rule 9027 applies, timely removal under Section 1446(b)(3) can also be valid. The cases cited by Plaintiffs simply stand for the proposition that the longer time period for removal applies when Section 1446(b)(3) and Rule 9027 are in conflict. *See Everett*, 329 B.R. at n. 1 (applying 9027 but noting removal was timely under both). Here, removal is timely under both and, as a result, both apply.

Finally, Plaintiffs appear to suggest that McCaleb is removing on the basis of diversity. *See* Plaintiffs' Memo in Support of Motion to Remand (Rec. Doc. 8), at 4 ("the notice of removal also looks to 28 U.S.C. § 1446(b)(3) for the proposition that removal on diversity grounds is proper . . ."). For the avoidance of any doubt, McCaleb is not relying on diversity as a basis for removal.

21

The removal is based on bankruptcy-related jurisdiction that was created by the recognition of the Japanese Rehabilitation Proceeding and the filing of Plaintiffs' Proof of Claim therein.

### c.   The Court also has discretion in extraordinary circumstances, like these, to allow removal out of time

Finally, if the Court is not persuaded that removal was timely under either Rule 9027 or Section 1446(b)(3), the Court should use its discretion under Rule 9006 to allow removal out of time. *See* Fed. R Bankr. P. 9006. Plaintiffs raise a procedural objection by claiming McCaleb did not file a formal motion for extension. *See* Plaintiffs' Memo in Support of Motion to Remand (Rec. Doc. 8), at 6. But, the Notice of Removal clearly moves the court for enlargement of time pursuant to Rule 9006, and the Court may grant that motion. *See* Notice of Removal (Rec. Doc. 1), at ¶ 21. Therefore, Plaintiffs' procedural objection has no merit.

In exercising their discretion under Rule 9006, "courts are necessarily entrusted with broad equitable powers to balance the interests of the affected parties." *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 389 (1993). Here, equity dictates that McCaleb's removal be allowed if the Court concludes it is untimely.

There is no dispute that this case presents extraordinary circumstances. A Japanese company that Plaintiffs recently acknowledge has the property they seek to recover from McCaleb in this litigation has been converted from liquidation to rehabilitation mid-lawsuit. Plaintiffs, apparently in an effort to avoid removal based on bankruptcy-related jurisdiction, did not file a proof of claim in the liquidation proceeding. Only after the MTGOX estate was converted to a rehabilitation *and* after McCaleb highlighted the lack of a proof of claim as a failure to mitigate damages - did Plaintiffs file their Proof of Claim. Plaintiffs then withheld the Proof of Claim from McCaleb until he threatened to file a motion to compel. *See* Exhibits S, T, and U. And the Texas

Bankruptcy Court did not recognize the Japanese Rehabilitation Proceeding until December 11, 2018. Plaintiffs have concealed the connection of their claims to the MTGOX bankruptcy estate to take advantage of possible recovery in bankruptcy while attempting to prevent McCaleb from availing himself of federal jurisdiction based on that very bankruptcy. This behavior cannot be rewarded, and McCaleb respectfully requests that the Court deny Plaintiffs' Motion to Remand.

## III.    THE RULE OF UNANIMITY DOES NOT APPLY

Plaintiffs' third argument—that remand is appropriate because McCaleb failed to obtain consent from the other co-defendant, MTGOX, Inc.—has been rejected by this Court on several occasions. In *Everett v. Friedman's Inc.*, 329 B.R. 40 (S.D. Miss. 2005), this Court stated that "the rule of unanimity, which derives from 28 U.S.C. § 1441, does not apply to bankruptcy removals under § 1452, which permits removal by 'a party.'" *Id.*, at 41-42 (citing *Beasley v. Personal Finance Corp.*, 279 B.R. 523, 529 (S.D. Miss. 2002)). McCaleb removed under Section 1452's bankruptcy-related provisions; diversity has nothing to do with the matters before this court. Because Section 1452 allows removal by any "party," rather than by "the defendants" as in Section 1441(a), McCaleb's removal was procedurally proper. Plaintiffs' reliance on *Berry v. Pharmacia Corp.* is unavailing, as Judge Lee's opinion in that case does not even address the rule of unanimity. 316 B.R. 883 (S.D. Miss. 2004).

Even if consent were required, obtaining consent from MTGOX, Inc. was impossible. Though MTGOX, Inc. was originally served in this case, it never answered the complaint and has no representation in this matter. That is because MTGOX, Inc. forfeited its Delaware corporate status in 2014 and no longer exists. *See* Exhibit V. Even if McCaleb was required to obtain consent from all parties, it would have been impossible to obtain consent from MTGOX, Inc. Courts in

other jurisdictions have held that the failure to obtain the consent of a defunct corporation is not a violation of the rule of unanimity. *See, Maryland v. Exxon Mobil Corp.*, -- F.3d --, 20118 WL 5296045, *25 (D. Mary. 2018) ("not possible for GPMI to give its consent to removal" because defunct). Therefore, even under Plaintiffs' erroneous description of the law the removal was proper.

## IV.    PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES IS WITHOUT MERIT

Plaintiffs' claim for costs and attorneys' fees must also be rejected. The United States Supreme Court has explained that such an award is only proper where "the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Where authority existed from some court "arguably supporting" removal, the Fifth Circuit has considered it an abuse of discretion to award attorneys' fees and costs. *See Omega Hosp., L.L.C. v. Louisiana Health Service & Indem. Co.*, 592 F.App'x 268, 272 (5th Cir. 2014). The Fifth Circuit has also stated that an objectively reasonable basis exists where "apparent uncertainty" exists because "[t]he Fifth Circuit has not yet spoken directly on the issue." *See Riverside Const. Co., Inc. v. Entergy Mississippi, Inc.*, 626 F.App'x 443, 447 (5th Cir. 2015). Even if the court concludes remand is appropriate, it cannot be said that McCaleb lacked an objectively reasonable basis for his removal. Plaintiffs demand for attorneys' fees and costs therefore must be denied.

## <u>CONCLUSION</u>

WHEREFORE, for the reasons stated above, McCaleb respectfully requests that Plaintiffs' Motion to Remand be denied.

Respectfully submitted, this the 4th day of March, 2019.

**JED McCALEB and**
**CODE COLLECTIVE, LLC**


By:   */s/ Edwin S. Gault, Jr.*
     EDWIN S. GAULT, JR. (MSB #10187)
     T. PEYTON SMITH (MSB #103867)
     MANDIE B. ROBINSON (MSB #100446)

     *Attorneys for Defendants Jed McCaleb and*
     *Code Collective, LLC*


OF COUNSEL:

FORMAN WATKINS & KRUTZ LLP
210 East Capitol Street, Suite 2200 (39201)
P.O. Box 22608
Jackson, MS 39225-2608
Phone: (601) 960-8600
Facsimile: (601) 960-8613
win.gault@formanwatkins.com
mandie.robinson@formanwatkins.com
peyton.smith@formanwatkins.com

ETHAN JACOBS (admitted *pro hac vice*)
HOLLAND LAW LLP
220 Montgomery Street, Suite 800
San Francisco, California 94104
Telephone: (415) 200-4984
ejacobs@hollandlawllp.com

25

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2019, I served a true and correct copy of the foregoing

document via electronic mail to the following counsel of record:

> Armin J. Moeller, Jr.
> Walter H. Boone
> Christine Crockett White
> Jonathan P. Dyal
> Andy Lowry
> Patrick Everman
> Perry P. Taylor
> Balch & Bingham, LLP
> 188 East Capitol Street
> Jackson, MS 39201-2608
> wboone@balch.com
> cwhite@balch.com
> alowry@balch.com
>
> ***Attorneys for Plaintiffs***

THIS, the 4th day of March, 2019.

/s/ Edwin S. Gault, Jr.
EDWIN S. GAULT, JR.

26