IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 15 |
| MtGox Co., Ltd. (a/k/a MtGox KK), | Case No. 14-31229-sgj-15 |
| Debtor in a Foreign Proceeding. | |

### DECLARATION OF NOBUAKI KOBAYASHI IN SUPPORT OF THE AMENDED VERIFIED PETITION FOR RECOGNITION AND CHAPTER 15 RELIEF

I, Nobuaki Kobayashi (the "Petitioner"), in my capacity as the bankruptcy trustee and foreign representative of MtGox Co., Ltd., a/k/a MtGox KK (the "Debtor" or "MtGox"), pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America that the following is true and correct to the best of my knowledge and belief, including based upon my review of the books, records and documents of the Debtor and interviews of the relevant personnel of the Debtor:

1.    I am a resident of Japan and, after receiving an L.L.B. from Chuo University in 1979, have been registered to practice law in Japan since 1983. I am currently a partner at Nagashima Ohno & Tsunematsu ("NO&T"), a Japan-based law firm engaged in the provision of corporate reorganization, insolvency and related services in Japan. Since becoming an attorney at law, I have been a member of the Insolvency Law Study Group of the Tokyo Bar Association, and I was appointed Chairperson in 2002. Since 2013, I have been Chairperson of the Study Committee on the Bankruptcy Law System of the Japan Federation of Bar Associations. I have lectured in a variety of programs and institutions and have delivered lectures on insolvency practice hosted by the Training and Research Institute for Court Officials of the Supreme Court of Japan and attended by Japanese judges. From 2007 to March 2014, I was a Visiting Professor

**EXHIBIT H**

in insolvency law at Chuo University Law School in Tokyo, Japan. In 2012, I was ranked the fourth most valuable business law attorney in Japan based on a survey conducted by Nikkei.

2. In addition, I have extensive experience in each of Japan's three types of insolvency proceedings, namely: (i) bankruptcy proceedings under the Bankruptcy Act of Japan (the "Bankruptcy Act"); (ii) civil rehabilitation proceedings under Japan's Civil Rehabilitation Act (*Minji Saisei Ho*) (the "JCRA"); and (iii) reorganization proceedings under Japan's Corporate Reorganization Act (*Kaisha Kosei Ho*). Specifically, I have served as: (i) the bankruptcy trustee in approximately 40 Japan bankruptcy proceedings involving companies; (ii) the supervisor in approximately 30 Japan civil rehabilitation proceedings; and (iii) the reorganization trustee in approximately 10 Japan reorganization proceedings.[1] As such, I am fully familiar with Japanese insolvency law and with MtGox's Japan Proceeding (as described below).

3. On April 24, 2014, I was appointed as the bankruptcy trustee of MtGox. As explained in more detail below, MtGox is the subject of a bankruptcy procedure (the "Japan Proceeding") under the Bankruptcy Act,[2] currently pending before the Twentieth Civil Division of the Tokyo District Court in Japan (the "Tokyo Court").

---

[1] I note that I served as the co-trustee and co-foreign representative of Elpida Memory, Inc. ("Elpida") in its reorganization proceedings in Japan and related Chapter 15 case in the U.S. Bankruptcy Court for the District of Delaware. In 2012, the Delaware Bankruptcy Court recognized the Elpida reorganization proceeding as a foreign main proceeding. See In re Elpida Memory, Inc., Case No. 12-10947 (CSS) (Bankr. D. Del. Apr. 24, 2012) [Docket No. 65].

[2] An English translation of the Bankruptcy Act, which was prepared by the Ministry of Justice in Japan, is available at: http://www.japaneselawtranslation.go.jp/law/detail/?re=01&dn=1&x=0&y=0&co=1&ia=03&yo =&gn=&sy=&ht=&no=&bu=&ta=&ky=%E7%A0%B4%E7%94%A3%E6%B3%95&page=29. English translations of the relevant provisions of the Bankruptcy Act referenced in this Declaration are attached hereto as **Exhibit 1**.

**EXHIBIT H**

4.     I submit this declaration in support of the Amended Verified Petition for Recognition and Chapter 15 Relief (the "Amended Petition"),[3] which I, in my capacity as bankruptcy trustee and foreign representative of MtGox, have contemporaneously filed with this Court seeking recognition of the Japan Proceeding as a "foreign main proceeding" or, in the alternative, a "foreign nonmain proceeding," and related relief under Chapter 15 of title 11 of the United States Code (the "Bankruptcy Code"). The facts hereinafter set forth in this declaration are based upon my personal knowledge or, as indicated below, based upon my investigation of the books, records and documents of MtGox and interviews of the relevant personnel of the Debtor.

5.     I respectfully seek entry of an order (the "Recognition Order") recognizing the Japan Proceeding as a "foreign main proceeding" as defined in 11 U.S.C. §§ 1502(4) and 1517(b)(1) or, in the alternative, a "foreign nonmain proceeding" as defined in 11 U.S.C. §§ 1502(5) and 1517(b)(2). I also request that this Court grant me, as the bankruptcy trustee and foreign representative of the Debtor, (i) authority to conduct necessary discovery pursuant to 11 U.S.C. § 1521(a)(4) and (ii) entrustment of the administration and realization of all of the Debtor's assets within the territorial jurisdiction of the United States, pursuant to 11 U.S.C. § 1521(a)(5). Under the auspices of the Tokyo Court and with the ancillary assistance of this Court, the ultimate goals of the Japan Proceeding are to liquidate the assets of MtGox in a manner that maximizes the recoveries for all creditors, wherever located, and to determine the current claims that exist to those assets and to make distributions to creditors in accordance with applicable Japanese law. To effectuate this goal, I respectfully request that this Court grant the relief requested in the Amended Petition.

---

[3]     Any capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Amended Petition.

3

EXHIBIT H

6.    I am advised by counsel that Chapter 15 recognition requires that a petition be brought by a "foreign representative" of a "foreign proceeding" as such terms are defined in, respectively, sections 101(24) and 101(23) of the Bankruptcy Code.  I am further aware that in order to be recognized under Chapter 15 as a foreign main proceeding or a foreign nonmain proceeding, sufficient evidence must be shown that the foreign proceeding is either pending in the debtor's "center of main interests" ("COMI") or where the debtor has an "establishment," in each case as these requirements have been interpreted for purposes of Chapter 15 recognition.

7.    Part I of this declaration provides evidence regarding the corporate structure of the Debtor, its corporate governance, an overview of its historical business operations and dealings with customers, and the background leading to the commencement of the Japan Proceeding.  Part II provides evidence regarding the Debtor's assets and liabilities and an overview of the claims and causes of action pending against the Debtor.  Part III provides an explanation of the Debtor's need for recognition and the relief being requested.  Part IV highlights the evidence in support of a determination that I am the Debtor's duly authorized foreign representative and that the Japan Proceeding is a foreign proceeding.   Part V highlights the key evidence supporting a determination that the Debtor's COMI is in Japan.

I.    **BACKGROUND TO THE DEBTOR'S JAPAN PROCEEDING**

    A.    **MtGox's Corporate Structure**

8.    On August 9, 2011, the Debtor was organized as a corporation under the laws of Japan for the purpose of constructing, developing and operating information technology systems and Internet websites.  See MtGox's Corporate Registry, attached hereto as **Exhibit 2**.  The Debtor's status as a corporation registered under Japanese law has never changed.

4

**EXHIBIT H**

9.     The Debtor is a subsidiary of Tibanne Co., Ltd, a/k/a Tibanne KK ("Tibanne"), a Japanese corporation organized in 2009. See Tibanne's Corporate Registry, attached hereto as **Exhibit 3**. Tibanne holds an 88% equity interest (440 shares) in the Debtor. As of the date of the Japan Petition, the remaining 12% equity interest (60 shares) in the Debtor was held by Jed McCaleb, who is believed to have started the Website (defined below) in 2010 and sold it to Tibanne in 2011. See Agreement and Plan of Acquisition dated February 3, 2011, attached hereto as **Exhibit 4**. Subsequently, the Debtor was responsible for operating the Website.

10.     Based on the Debtor's documents and my discussions with the relevant personnel of the Debtor, the Debtor also has two wholly-owned direct subsidiaries – MtGox North America Inc. ("MtGox NA") and MtGox Poland Inc. Sp. z o.o ("MtGox Poland") – and one wholly-owned indirect subsidiary – MtGox Inc., a direct subsidiary of MtGox NA. A copy of the Debtor's corporate organization chart is attached hereto as **Exhibit 5**.

11.     Based upon the Debtor's books and records, MtGox NA is a New York corporation organized on August 26, 2011. It is my understanding and belief that MtGox NA was initially established as a joint venture with a provider of internet-related business services based in the state of Indiana, which joint venture developed MtGox's business by managing the marketing and sales of MtGox's business in the United States.[4] The relevant joint venture agreement was governed by the laws of both Japan and the state of Indiana. Based upon my discussions with relevant MtGox personnel, it is my understanding and belief that MtGox NA opened a U.S. bank account at JP Morgan Chase Bank in 2011 and only accepted money from U.S. customers for one month, but since then has not conducted any other business activities.

---

[4]     The joint venture agreement, as well as certain other agreements referenced herein (including the Outsourcing Agreements (defined below)), are subject to non-disclosure and confidentiality provisions. As to those agreements, I will provide herein general references to the subject matter and governing law, which I understand is the information that may, in certain circumstances, be relevant for purposes of Chapter 15 recognition.

**EXHIBIT H**

12.     Based upon the Debtor's books and records, MtGox Inc. is a Delaware corporation organized on June 11, 2013. It is my understanding and belief that MtGox Inc. was established for the purpose of registering with the U.S. Financial Crimes Enforcement Network ("FinCEN") as a money transmitter and obtaining necessary state licenses for money transmission. According to the FinCEN registration website, MtGox Inc. received its money services business license from FinCEN on June 27, 2013 but, based on my discussions with the Debtor's relevant personnel, has not yet obtained any state money transmission licenses and has never conducted any business activities.

13.     Based upon the Debtor's books and records, it is my understanding and belief that MtGox Poland is a Polish corporation organized on November 8, 2011. It is my further understanding and belief that MtGox Poland was established in order to own bank accounts for MtGox customers in Europe, and that the only assets of MtGox Poland were those bank accounts. As of the date of this Declaration, substantially all of the funds held in accounts owned by MtGox Poland have been transferred to an account in Japan managed by me, in my capacity as the Debtor's bankruptcy trustee.

### B.     The Debtor's Head Office and Corporate Governance

14.     The Debtor's registered office and corporate headquarters (the "Head Office") is located at 2-11-5, Shibuya, Shibuya-ku, Tokyo, Japan, and has been at this location since September 2, 2013.[5] See MtGox Corporate Registry, attached hereto as **Exhibit 2**. The Debtor subleases this office space from Tibanne. See Japan Petition (defined below) § 2, ¶ 3, attached

---

[5]     According to the Debtor's Corporate Registry, the Debtor's Head Office has been located at 2-11-5 Shibuya, Shibuya-ku, Tokyo, Japan since September 2, 2013. Although it is not reflected in the Debtor's Corporate Registry, it is my understanding and belief based upon of the relevant agreement that the Debtor's Head Office was temporarily moved back to the Cerulean Tower (defined below) in February 2014. However, this plan was not completed and the Debtor returned to its current location after only one week at the Cerulean Tower.

**EXHIBIT H**

hereto as **Exhibit 6**. Since the Debtor's inception, the Debtor's Head Office has been located at two other addresses in Tokyo, Japan.[6] See id. Tibanne's registered office has always coincided with the Debtor's Head Office, and is currently located at the Debtor's Head Office. See Tibanne Corporate Registry, attached hereto as **Exhibit 3**. The Debtor does not have any offices or places of business other than the Head Office.

15.     At all times, the Debtor has maintained its statutory books and records at its Head Office in Japan. The Debtor does not have a registered agent, as such agents are not provided for under applicable Japanese corporate laws.

16.     The Debtor's founder, sole director and representative director is, and has always been, Robert Marie Mark Karpeles. See MtGox Corporate Registry, attached hereto as **Exhibit 2**. Mr. Karpeles is also the sole director and representative director of Tibanne. Since the Debtor's inception, Mr. Karpeles has lived at three different addresses, all of which are in Japan.[7] Mr. Karpeles's current address is located at 3-6-28-302 Aobadai, Meguro-ku, Tokyo, Japan. See id. From its inception, the Debtor has been structured as a corporation with a sole director and representative director and has never had a board of directors. As such, there were no board meetings or board communications and all corporate decisions emanated from Mr. Karpeles, in his capacity as the Debtor's sole director and representative director. Under Japanese corporate law, where, as is the case here, a Japanese corporation has only one director and no board of directors, the sole director and representative director of the corporation has the power and

---

[6]     According to the Debtor's Corporate Registry, the Debtor's Head Office was initially located at Cerulean Tower 15F, 26-1 Sakuragaoka-cho, Shibuya-ku, Tokyo, Japan (the "Cerulean Tower") from the date of its establishment to June 24, 2012. From June 25, 2012 through September 1, 2013, the Debtor's Head Office was located at Round-Cross 5F, 2-11-6 Shibuya, Shibuya-ku, Tokyo, Japan.

[7]     According to the Debtor's Corporate Registry, Mr. Karpeles' address was located at 5-24-30 Kugayama, Suginami-ku, Tokyo, Japan from the date of the Debtor's establishment to October 9, 2011. From October 10, 2011 through January 18, 2014, Mr. Karpeles' address was located at Akatsutsumi Terrace House C1, 5-28-8, Akatsutsumi, Setagaya-ku, Tokyo, Japan. Since January 19, 2014, Mr. Karpeles' address has been located at 3-6-28-302 Aobadai, Meguro-ku, Tokyo, Japan.

EXHIBIT H

authority with respect to any matter in relation to the business of the corporation, except such matters that require shareholder approval.

17.     The Debtor's financial statements were prepared (but not audited) by Aoyama & Partners ("A&P"), a Japan-based accounting firm, pursuant to an Advisor Agreement dated February 16, 2010, which agreement is governed by Japanese law. Under the Corporate Act of Japan, the Debtor is not legally obligated to have financial statements audited by a third party.

### C.     Employees

18.     The Debtor does not have, and has never had, any direct employees. Instead, the Debtor's workforce is supplied by the Debtor's parent, Tibanne, through a certain services agreement between the Debtor and Tibanne, dated April 1, 2013 (the "Services Agreement"). A copy of the Services Agreement is attached hereto as **Exhibit 7**. As of the date of commencement of the Japan Proceeding, the Debtor utilized approximately 29 Tibanne employees to perform work on behalf of the Debtor pursuant to the Services Agreement. Those Tibanne employees provided operational services to the Debtor, including: (i) customer support; (ii) business development and marketing; (iii) implementation of anti-money laundering procedures; (iv) website development; (v) monitoring of bitcoin and fiat currency transfers; and (vi) various administrative services, including secretarial, financial, accounting, legal and human resource services. However, since the commencement of the Japan Proceeding, the number of employees working for the Debtor has significantly decreased. Based upon my discussions with the Debtor's relevant personnel, it is my understanding and belief that all of the Tibanne employees that have ever worked for the Debtor performed their work in Japan.

19.     In addition, the Debtor has hired independent contractors to provide certain customer support services pursuant to two outsourcing and service agreements (the "Outsourcing

**EXHIBIT H**

Agreements"). Based upon my review of the Outsourcing Agreements and my discussions with the Debtor's relevant personnel, the Outsourcing Agreements consist of: (i) an agreement with a U.K.-based firm that is governed by Japanese law, pursuant to which two individuals perform work for the Debtor in the United Kingdom; and (ii) an agreement with an India-based firm that is governed by Indian law, pursuant to which approximately 30-40 individuals perform work for the Debtor in India.[8] Additionally, it is my understanding and belief that the Debtor has also utilized the services of an individual who works as an independent contractor in Peru.

### D.     Other Contracts

20.     In addition to the Services Agreement and the Outsourcing Agreements, other contracts of the Debtor relating to its business include:

- An agreement for "anti-money laundering" services with an England-based company, which agreement is governed by the law of England; and

- An agreement with a Canada-based company for services relating to the design and development of a marketing website, which agreement is governed by the law of the Province of Ontario, Canada.

### E.     The Debtor's Business Operations Prior to the Shutdown of Its Exchange

21.     The Debtor's main business is the operation of an online exchange (the "MtGox Exchange") for the purchase and sale of bitcoin through the Debtor's website with the domain name http://www.mtgox.com (the "Website"). It is my understanding and belief that the software and Website used to operate the MtGox Exchange were first developed in 2010 by Jed McCaleb, who sold the software, Website domain name rights, and then-existing customer accounts to Tibanne on February 3, 2011. See Agreement and Plan of Acquisition. Based on the

---

[8]     The contracts referenced herein are subject to certain non-disclosure and confidentiality provisions. To the extent that this Court finds it necessary to review these contracts, we can submit them to the Court under seal.

**EXHIBIT H**

Debtor's records and documents, it is my understanding and belief that Tibanne thereafter granted MtGox the right to operate the MtGox Exchange.

22.    Based upon available public information, it is my understanding and belief that at one time MtGox was reported to be the largest online bitcoin exchange in the world, handling over 80% of all bitcoin trade worldwide, but that is no longer the case.

23.    It is my understanding that bitcoin is a form of digital currency that reportedly was first conceived of in 2008 by a person or group going by the name of Satoshi Nakamoto. Reportedly, the first actual bitcoin was created or "mined" in 2009. I understand there are several ways in which a person can obtain bitcoin, including the following:

- Bitcoins are "created" through a computer software algorithm which, at any point in time, resides on thousands of computers on the Internet. Persons who certify bitcoin transactions over the bitcoin peer-to-peer network are remunerated by the issuance of a fixed number of bitcoins which evolves over time. The certification is done by the solving of an "algorithm" with the use of ever-more powerful computers. These persons are called "miners" and the process of obtaining bitcoin in this fashion is called "mining."

- A person can also obtain bitcoins that have already been mined by buying them from another. These transactions can consist of "one-to-one" transactions between a buyer and seller. In addition, a person can buy or sell bitcoin through an online exchange, such as the MtGox Exchange operated by MtGox on the mtgox.com website. In these exchange transactions, the buyer and seller create accounts at the exchange and then fund the account with currency funds, bitcoin or both. The user can then enter a buy or sell order online and the website will match the buy or sell order with one or more sell or buy orders. The buyer receives an increase in bitcoin in his/her account and the seller receives an increase in currency in his/her account. The bitcoin exchange receives a fee or commission for the transaction.

- A person can also obtain and use bitcoin through commercial or merchant transactions; that is, a person can use bitcoin in certain circumstances to pay for goods and services.

24.    According to a customer list provided to me by the Debtor, the Debtor has approximately 120,000 customers who had a balance in their bitcoin or fiat currency account as of the date of the Japan Petition, and those customers reside in approximately 175 countries

EXHIBIT H

around the world. As of the date of this Declaration, I currently have information on the location of approximately 80,000 customers. Of that amount, I have determined that approximately 30,701 customers are located in the United States, approximately 6,103 are located in the United Kingdom, approximately 5,921 are located in Germany, approximately 2,458 are located in Canada, approximately 2,416 are located in France, approximately 2,284 are located in China, and approximately 1,095 are located in Japan.

25.     The MtGox exchange allowed persons with MtGox accounts to buy and sell bitcoin among themselves. It is my understanding and belief that using the MtGox Exchange generally consisted of a five-step process: (i) opening an account; (ii) verifying the account; (iii) adding funds to the account; (iv) buying and selling bitcoins; and (v) withdrawing funds.[9] To open and use a MtGox account, a prospective customer would fill out an application on the Website.     Based upon my discussions with the Debtor's relevant personnel, it is my understanding and belief that after completing the application, the Website would display standard terms and conditions for use of the MtGox Exchange and the customer would need to click a button indicating that he or she agreed to those terms and conditions before creating an account. Once the account was created, the customer was assigned an account number. When a customer wanted to start buying or selling bitcoin on the MtGox Exchange, he or she would need to fund the account by depositing currency, bitcoin, or both into the account. The Website's "General Information" page (the "General Information Page")[10] answered frequently asked

---

[9]     Copies of the Website screenshots describing each step are attached hereto as **Exhibit 8**, as they appeared on February 21, 2014 and were obtained through the website archiving service known as "Wayback Machine" located at http://www.archive.org.

[10]     A copy of the General Questions Page is attached hereto as **Exhibit 9**, as it appeared on May 1, 2013 and was obtained through the website archiving service known as "Wayback Machine" located at http://www.archive.org.

**EXHIBIT H**

questions regarding setting up a MtGox account and identified the Debtor as a company based in Japan.

26.     It is my understanding and belief that the MtGox Exchange permitted customers to choose into what kind of account they wanted to transfer their funds, including accounts with payment transfer companies or traditional consumer banks. Once the account was "funded," the account holder would have a "currency balance" in the account, corresponding to the amount of currency he or she had a right to withdraw; and, a "bitcoin balance" in the account, corresponding to the amount of bitcoin he or she had a right to withdraw. Each customer could view his or her account statement on the Website, and it is my understanding and belief, based upon my discussions with the Debtor's relevant personnel, that the Debtor did not deliver paper-based account statements to its customers.

27.     In addition, the account holder would be subject to certain "anti-money laundering" ("AML") procedures. Based upon previous iterations of the Website, the Debtor's AML procedures generally required the verification of customer accounts through the customer's submission of identification documents. The Website's "AML Account Statuses" page (the "AML Page") setting forth the AML verification requirements instructed customers wishing to upgrade their accounts to a "premium account" to mail their identification documents to the Tokyo address of the Debtor's Head Office.[11]

28.     According to the General Questions Page, customers were directed to contact the Debtor for user support issues through the Website at its "Contact Us" page located at http://mtgox.com/contact-us. The General Questions Page also stated that there may be delays in the response time to some user support inquiries because the Debtor is based in Japan.

---

[11]     A copy of the AML Page is attached hereto as **Exhibit 10**, as it appeared on February 21, 2014 and obtained through the website archiving service known as "Wayback Machine" located at http://www.archive.org.

12

**EXHIBIT H**

### F.    Trade Creditors

29.    Based upon the discussions with the Debtor's appropriate personnel, the Debtor has at least 10 trade creditors, who are owed money for providing goods or services to the Debtor prior to the filing of the Japan Petition. Of these trade creditors, approximately five have offices located in Japan. The remaining trade creditors are located in various jurisdictions, including the United States, the United Kingdom, Poland and India.

### G.    Communications with Customers, Creditors and Other Parties

30.    Based upon my discussions with the Debtor's relevant personnel and my review of the Debtor's records, the Debtor historically communicated with its customers through electronic means, usually either by e-mail or through the Website. Furthermore, it is my understanding that the Debtor would send various notices to its customers to provide updates related to its services, such as new options for depositing funds in their MtGox account. These notices were generally sent to each customer via e-mail and posted to the Website, but it is my understanding and belief that such notices were not delivered by postal mail, telephone or facsimile.

31.    Prior to the shutdown of the MtGox Exchange in February 2014, the Website clearly communicated to customers and other parties that the Debtor is a Japanese company that is located in Japan. For example, the Website's "Terms of Use" page (the "Terms of Use Page") referred to the Debtor as "a company incorporated under the laws of Japan" and disclosed the address of its Head Office in Tokyo, Japan.[12] Similarly, the Website's "Privacy Policy" page (the "Privacy Policy Page") also noted the Tokyo address of the Debtor's Head Office along with

---

[12]    A copy of the Terms of Use Page is attached hereto as **Exhibit 11**, as it appeared on February 15, 2014 and obtained through the website archiving service known as "Wayback Machine" located at http://www.archive.org.

13

the Debtor's Tokyo phone number.[13] In addition, the Website's "About Us" page (the "About Us Page") contained a link to the Debtor's official registration at the Tokyo Chamber of Commerce.[14]

32.     Following the shutdown of the MtGox Exchange and filing of the Japan Petition, as described in more detail below, the Debtor continued to use the Website to communicate with customers, creditors and other parties. On February 28, 2014, the Debtor posted a notice regarding the Debtor's application for commencement of a civil rehabilitation proceeding (the "Civil Rehabilitation Notice"). The Civil Rehabilitation Notice provided the address of the Debtor's Head Office, announced the establishment of a call center (the "Call Center") with a Tokyo telephone number and hours of operation from 10 a.m. to 5 p.m. (Japan time), and urged all creditors to direct their inquiries to the Call Center. On March 26, 2014, the Debtor posted a notice regarding consultations with local investigating authorities on the disappearance of bitcoins (the "Disappearance Notice"). On March 28, 2014, the Debtor posted a notice regarding the extension of the deadline to submit the examiner's report (the "Examiner's Report Notice"). On April 16, 2014, the Debtor posted a notice regarding dismissal of the Japan Civil Rehabilitation (defined below) (the "Debtor's Dismissal Notice"). Each of the Disappearance Notice, Examiner's Report Notice and Dismissal Notice set forth the address of the Debtor's Head Office in Tokyo, Japan.[15]

---

[13]   A copy of the Privacy Policy Page is attached hereto as **Exhibit 12**, as it appeared on February 15, 2014 and obtained through the website archiving service known as "Wayback Machine" located at http://www.archive.org.

[14]   A copy of the About Us Page is attached hereto as **Exhibit 13**, as it appeared on April 25, 2013 and obtained through the website archiving service known as "Wayback Machine" located at http://www.archive.org.

[15]   A copy of each of the Disappearance Notice, Examiner's Report Notice and Debtor's Dismissal Notice are attached hereto as **Exhibits 14, 15 and 16**, respectively.

**EXHIBIT H**

33. Upon my appointments as the Debtor's provisional administrator and then as the Debtor's bankruptcy trustee, as described in more detail below, I continued the Debtor's prior practice of communicating to customers, creditors and other parties through the Website. On April 16, 2014, I posted a notice of the Tokyo Court's order dismissing the Japan Civil Rehabilitation and provided answers to frequently asked questions regarding the status of the Debtor's insolvency proceedings in Japan (the "FAQ Notice").[16] In the FAQ Notice, I stated that additional information regarding the Debtor's Japan Proceeding would be posted to the Website and that interested parties should direct their inquiries to the Call Center, which remained at the Tokyo telephone number with operating hours between 10 a.m. and 5 p.m. (Japan time). On April 24, 2014, I posted a notice that the Japan Proceeding had commenced in the Tokyo Court and provided answers to additional frequently asked questions regarding the Japan Proceeding (the "Japan Proceeding Notice").[17] In the Japan Proceeding Notice, I reiterated that interested parties should direct their inquiries to the Call Center, which remained at the Tokyo telephone number with operating hours between 10 a.m. and 5 p.m. (Japan time). Also on April 24, 2014, I posted to the Website a copy of the Bankruptcy Order (defined below) that, among other things, identified my location, as bankruptcy trustee, as being at the location of the Debtor's Head Office in Tokyo, Japan.

34. Additionally, the Debtor's Articles of Incorporation state that the Debtor shall provide "public notice"[18] by publication in the Official Gazette, an official Japanese government

---

[16] A copy of the FAQ Notice is attached hereto as **Exhibit 17**.

[17] A copy of the Japan Proceeding Notice is attached hereto as **Exhibit 18**.

[18] Under applicable Japanese corporate law, certain matters need to be disclosed through a "public notice" as provided in a company's articles of incorporation – in the Debtor's case, the Official Gazette. Generally, these matters include notices of a merger, corporate split and decrease in capital, among other things.

EXHIBIT H

newsletter that provides information related to governmental and corporate actions. See MtGox Articles of Incorporation, Art. 4, attached hereto as **Exhibit 19**.

### H.    The Debtor's Business Challenges

35.    Since the Debtor began operation of the MtGox Exchange several years ago, it is my understanding, based upon discussions with the Debtor's relevant personnel, that the Website has been subject to numerous attempts to breach its security, create denial of service situations, or to otherwise "hack" the system.  In certain circumstances such attempts have led to the Debtor shutting down the Website for periods at a time.

36.    According to the Japan Petition (defined below), on or about February 10, 2014, MtGox halted all bitcoin withdrawals by its customers after MtGox was subject to a massive theft or disappearance of bitcoins held by MtGox both on behalf of its customers and itself.

37.    Also according to the Japan Petition, MtGox suspended all trading on February 24, 2014 after internal investigations discovered a loss of approximately 850,000 bitcoins.  After filing the Japan Petition, the Debtor conducted an investigation into the bitcoin theft and in the process rescanned certain old-format wallets which were used prior to June 2011.  See Announcement Regarding Found Bitcoins, dated March 20, 2014, attached hereto as **Exhibit 20**. On March 7, 2014, the Debtor confirmed that one of these old-format wallets held approximately 200,000 bitcoins and reported the finding to the Tokyo Court and me on March 10, 2014. See id. Taking into account the 200,000 bitcoins that were found, the total number of bitcoins that have disappeared is now estimated to be approximately 650,000.  It is my understanding and belief that this loss of bitcoins caused, among other things, MtGox to become insolvent and ultimately led to the Japan Proceeding.

16

**EXHIBIT H**

### I.   Events Leading to MtGox's Japan Proceeding

38.     On February 28, 2014, the Debtor, through its prior foreign representative, Mr. Karpeles, filed a petition (the "Japan Petition") for the commencement of a civil rehabilitation proceeding (the "Japan Civil Rehabilitation") in the Tokyo Court pursuant to Article 21(1) of the JCRA, reporting that the Debtor had lost almost 850,000 bitcoins. The Japan Petition is attached hereto as **Exhibit 6**.

39.     The JCRA is intended to streamline proceedings for the rehabilitation and reorganization. The JCRA defines its purpose as:

> [B]y formulating, for debtors in financial difficulties, rehabilitation plans as consented to by a number of their creditors and confirmed by the court, to appropriately coordinate the relationships of rights under civil law between such debtors and creditors, with the aim of ensuring the rehabilitation of the debtors' business or economic life.

See JCRA, Art. 1. As such, the Japan Civil Rehabilitation was commenced with the purpose to formulate a rehabilitation plan as consented to by a requisite number of creditors and confirmed by the court, to appropriately coordinate the relationships of rights between creditors and the debtor, with the aim of ensuring rehabilitation of the Debtor's business or economic life.

40.     In addition to the Japan Petition, the Debtor contemporaneously filed applications for a temporary restraining order and a comprehensive prohibition order, which the Tokyo Court granted by separate orders dated February 28, 2014 (the "Additional Relief Orders"). Also on February 28, 2014, the Tokyo Court entered two separate orders (the "Supervisor and Examiner Orders") appointing me as the Debtor's supervisor and examiner. Under the Additional Relief Orders, the Debtor was not permitted, among other things, to dispose of its assets, excluding transactions in the ordinary course of business. Further, under the Supervisor and Examiner Orders, the Debtor was not permitted, among other things, to dispose of its assets, excluding

**EXHIBIT H**

transactions in the ordinary course of business, without my consent as the supervisor and examiner. On March 9, 2014 (March 10, 2014 in Japan), pursuant to the powers conferred upon me by the Supervisor and Examiner Orders, I issued a consent allowing the Debtor to hire Baker & McKenzie LLP to file a Chapter 15 petition for recognition of the Japan Civil Rehabilitation in the United States. That same day, the Tokyo Court approved the Debtor's retention of Baker & McKenzie LLP in order to commence this Chapter 15 case.

41.     On March 9, 2014 (the "Chapter 15 Petition Date"), the Debtor, through its then foreign representative, Mr. Mark Marie Robert Karpeles, commenced this Chapter 15 case by filing a petition in this Court for recognition of the Japan Civil Rehabilitation as a foreign main proceeding and for related relief under Chapter 15.

42.     Since the filing of the Japan Petition, the Debtor commenced an investigation with regard to the circumstances that led to the Japan Civil Rehabilitation. However, in mid-April 2014, the Debtor filed a notice (*joshin-sho*) with the Tokyo Court stating that the investigation would take a long period of time, that there was no specific plan to restart the Debtor's business, and that partly due to the status of the investigation, the process for seeking a buyer in relation to a sale of the Debtor's assets had not commenced, and therefore the Debtor would be unable to prepare a rehabilitation plan. On April 16, 2014, in my capacity as supervisor and examiner, I submitted my own notice (*joshin-sho*) in response to the Debtor's notice, stating that the Debtor's statements were not unreasonable, and that in my opinion it would not be appropriate to grant an order commencing the Japan Civil Rehabilitation. After the Tokyo Court received my notice, the Tokyo Court decided to dismiss the Japan Petition pursuant to Article 25(3) of the JCRA, recognizing that under the circumstances it would be very difficult for the Debtor to

18

**EXHIBIT H**

successfully prepare and approve a rehabilitation plan or otherwise successfully carry out the Japan Civil Rehabilitation.

43.     Under Article 251(1) of the JCRA, a Japanese court may, by its own authority, grant a provisional administration order when the Japanese court enters an order to dismiss an application for commencement of a civil rehabilitation proceeding.   Additionally, when a Japanese court's order dismissing an application for commencement of a civil rehabilitation becomes final and binding, the court may, by its own authority, decide to commence a bankruptcy procedure against the debtor under the Bankruptcy Act pursuant to Article 250(1) of the JCRA.

44.     As a result, by separate orders dated April 16, 2014, the Tokyo Court entered judgments placing the Debtor in a provisional administration by: (a) dismissing the Japan Petition; (b) appointing me as the Debtor's provisional administrator; (c) prohibiting certain actions by creditors with regard to properties of the Debtor during the interim period following the dismissal and prior to the commencement of a bankruptcy procedure for the Debtor; and (d) prohibiting me, in my capacity as the provisional administrator, from undertaking certain actions with respect to the Debtor's debt, properties and claims.

45.     Subsequently, on April 24, 2014, the Tokyo Court entered an order formally commencing the Debtor's Japan Proceeding and appointing me as bankruptcy trustee (the "Bankruptcy Order").  A certified copy of the Bankruptcy Order along with its certified English translation is attached to the Amended Petition as Exhibit A.

46.     As set forth in Article 1 of the Bankruptcy Act, the purpose of a Japanese bankruptcy procedure under the Bankruptcy Act is to appropriately coordinate the interests of creditors and other interested persons with the aim of ensuring a proper and fair liquidation of the

EXHIBIT H

debtor's property. Furthermore, pursuant to Article 31(1) of the Bankruptcy Act, a bankruptcy trustee is appointed at the same time as the decision to commence a bankruptcy procedure. Pursuant to Article 75 of the Bankruptcy Act, the bankruptcy trustee is under the supervision of the Japanese court. Additionally, Article 78(1) of the Bankruptcy Act provides that the right to administer and dispose of the property of the bankruptcy estate is vested solely in the bankruptcy trustee. Under Article 34(1) of the Bankruptcy Act, the bankruptcy estate encompasses all property held by the debtor at the time of commencement of the bankruptcy procedure, whether located inside or outside of Japan. In addition to the appointment of a bankruptcy trustee, Article 44(1) of the Bankruptcy Act provides that any pending lawsuits relating to the bankruptcy estate in which the debtor is a party are immediately stayed. Article 194(2) of the Bankruptcy Act provides that, distribution with regard to bankruptcy claims will be made on a *pro rata* basis in proportion to the amount of the respective claims. English translations of the Articles of the Bankruptcy Act referenced above are attached hereto as **Exhibit 1**.

47.    In order to fully carry out my duties as the Debtor's bankruptcy trustee, I am assisted by other attorneys at the NO&T Tokyo office, and certain of those attorneys have been appointed as deputy trustees.

## II.    THE DEBTOR'S ASSETS, LIABILITIES AND LITIGATION

48.    Due to the disruption in the affairs of the Debtor following the theft or disappearance of hundreds of thousands of bitcoins on the MtGox Exchange and notwithstanding my diligent (but preliminary) investigation efforts as bankruptcy trustee of the Debtor, a fully comprehensive and accurate description of the Debtor's assets and liabilities is not yet available. I am in the process of conducting an examination into the Debtor's books and records that are accessible to me and have met with relevant parties to obtain information, including the Debtor's

20

**EXHIBIT H**

sole director and representative director, Mr. Karpeles, and related counsel who performed services for the Debtor in Japan. A summary of the present status of the assets and liabilities of the Debtor based on such information as is currently available is set forth below.

### A. The Debtors Assets and Liabilities

49.     The Debtor reported to have approximately ¥6.5 billion ($63.9 million) in liabilities and approximately ¥3.8 billion ($37.7 million) of assets when it filed the Japan Petition. Subsequently, approximately 200,000 bitcoins were discovered in an old-format wallet. As bankruptcy trustee, I now have exclusive control over those bitcoins. I am currently leading an investigation into the precise amount of the Debtor's assets and liabilities, so these numbers are not yet final and subject to revision.

50.     MtGox has no secured debt.

51.     As of February 20, 2014, prior to filing the Japan Petition, the Debtor maintained 43 accounts at 14 different banks and payment service providers holding funds in various currencies in the total amount of approximately ¥502,705,438 or $4,912,754.[19] Of the Debtor's 43 bank accounts, 39 are located in Japan. In addition, based upon my discussions with the relevant personnel of the Debtor, it is my understanding and belief that (i) currently the Debtor's primary bank for its business operations is Japan Net Bank, Limited, which is located in Japan; and (ii) previously the Debtor's primary banks were Sumitomo Mitsui Banking Corporation and Mizuho Bank, which are also located in Japan. The Debtor's other accounts are located in the Caribbean, Europe and Australia.

---

[19]    In order to simplify reporting in this Declaration, all currencies are translated into Japanese Yen ("JPY") and then into United States Dollars ("USD") using the conversion rate as of February 20, 2014 at 1 USD = 102.3266 JPY.

**EXHIBIT H**

52.     Since being appointed as the Debtor's bankruptcy trustee, I have made efforts to consolidate the Debtor's worldwide funds in Japan. As part of those efforts, I have opened up a bankruptcy trustee account with Tokyo-Mitsubishi UFJ bank in Tokyo (the "Trustee Account"). As of the date of this Declaration, the Trustee Account holds funds in the aggregate amount of approximately ¥764,985,789 or $7,550,913. The funds in the Trustee Account include substantially all of the funds formerly held by the Debtor's subsidiary MtGox Poland in the aggregate amount of approximately $5 million, which funds I have repatriated to Japan.

53.     On or about May 14, 2013, the United States Department of Homeland Security ("DHS") seized approximately $5 million of cash held in the U.S. bank accounts of Mutum Sigillum LLC ("Mutum"). Based upon my discussions with relevant personnel of the Debtor, it is my understanding and belief that Mutum is not a parent or subsidiary of the Debtor. Instead, it is a company wholly owned by Mr. Karpeles for his personal business. It is my understanding that Mutum had U.S. accounts with Wells Fargo Bank and Dwolla, a payment service provider located in the United States. In order to facilitate trades on the MtGox Exchange, it is my understanding that Mutum funded its Dwolla account from its Wells Fargo account and, after a trade had been made, funds would be transferred from Mutum's Dwolla account to its Wells Fargo account. Based on my discussions with relevant personnel of the Debtor, (i) the funds in Mutum's Dwolla account are all MtGox funds, and (ii) it is unclear whether the funds in Mutum's Wells Fargo account were all MtGox funds, so some or all of those funds may belong to the Debtor. As the Debtor's bankruptcy trustee and foreign representative, I am considering my options for seeking to have these funds returned to the Debtor's bankruptcy estate for distribution to creditors.

**EXHIBIT H**

54.    In addition to its cash and bitcoin assets, the Debtor owned, as of the date of the filing of the Japan Petition, the following tangible assets: (i) computer servers that were purchased from Dell and Violin Memory Inc.; (ii) laptop computers; and (iii) "one-time-purchase" or OTP cards and Yubikeys, which are used to keep user passwords secure. All of these assets are located in Japan.

55.    Other than the servers and laptops mentioned above, it is my understanding, based upon my review of the Debtor's books and records, that the Debtor does not own the computer systems or servers that are used in its business. Pursuant to the Services Agreement, Tibanne provided the Debtor with the servers and computer systems for the operation of the MtGox Exchange. It is my further understanding, based upon my consultation with the Debtor's former counsel at Baker & McKenzie LLP, that (i) the Tibanne-owned servers that were used to operate the MtGox Exchange were located in Japan; (ii) Tibanne also leased certain other servers for backup purposes and to assist in transferring bitcoin to and from the Website; (iii) these other servers were, as of the Chapter 15 Petition Date, located in: Dallas, Texas; St. Louis, Missouri; the United Kingdom; France; and Germany; and (iv) other server-related services were provided by Amazon (EC2) in Japan, Singapore, California and Oregon.

## B.    The U.S. Litigation Matters

56.    MtGox has been named as a defendant in two pending lawsuits in the United States: (i) CoinLab, Inc. v. Mt.Gox KK, et al., Case No. 13-0777 (MJP) (W.D. Wash. May 2, 2013) (the "CoinLab Action"); and (ii) Greene v. MtGox Inc., et al., Case No. 14-01437 (GF) (N.D. Ill. Feb. 27, 2014) (the "Class Action," and together with the CoinLab Action, the "U.S. Litigation Matters"). The facts set forth below regarding the U.S. Litigation Matters are based on information supplied to me by my U.S. counsel.

**EXHIBIT H**

### 1.   *The CoinLab Action*

57.     The CoinLab Action was filed in the United States District Court for the Western District of Washington (the "Washington Court") by CoinLab, Inc. ("CoinLab"). I have been advised that the claims asserted by CoinLab arise out of that certain Executive License Agreement for the USA & Canada (the "CoinLab Agreement"), dated November 22, 2012 and entered into between CoinLab on the one hand, and MtGox and Tibanne on the other. Under the CoinLab Agreement, CoinLab was granted a license to use MtGox's technology to provide bitcoin exchange services for customers in the U.S. and Canada. As part of the CoinLab Agreement, which is governed by the law of the state of Washington, CoinLab agreed to operate the services in compliance with all applicable laws.

58.     I have been further advised that the facts disclosed and alleged in the Coinlab Action indicate that:  (i) prior to final implementation of the CoinLab Agreement, it was determined that CoinLab was not properly registered or licensed to perform the services called for under the CoinLab Agreement; and (ii) as a result of such nonperformance by CoinLab, MtGox ceased its own performance under the CoinLab Agreement, which was never fully implemented in the first place.

59.     I have also been advised that CoinLab is suing MtGox and Tibanne for alleged breach of the CoinLab Agreement and breach of the implied duty of good faith and fair dealing. CoinLab is seeking damages of $75,000,000, which includes $50,000,000 arising from a liquidated damages clause in the CoinLab Agreement, as well as accounting and restitution. In addition, I have been advised that the Debtor has asserted a counterclaim against CoinLab seeking to recover $5.2 million relating to CoinLab's conversion of customer funds.

24

**EXHIBIT H**

### 2. *The Class Action*

60.     On February 28, 2014, individuals by the names of Gregory Greene and Joseph Lack, each individually and on behalf of a putative class of others similarly situated (collectively, the "Class Action Plaintiffs"), filed the Class Action against the Debtor and certain of its affiliates and officers in the United States District Court for the Northern District of Illinois (the "Illinois Court"). I have been advised that the Class Action complaint, as amended, asserts 15 causes of action against the Debtor, including: (i) consumer fraud; (ii) fraud in the inducement; (iii) negligence; (iv) breach of fiduciary duty; (v) breach of contract; (vi) unjust enrichment; (vii) preliminary injunction; (viii) permanent injunction; (ix) trespass to chattels; (x) conversion; (xi) accounting; (xii) constructive trust; (xiii) civil conspiracy; (xiv) breach of express trust; and (xv) breach of the RICO Act.

### III.     THE NEED FOR RECOGNITION

61.     In light of, *inter alia*, the U.S. Litigation Matters, I believe that recognition of the Japan Proceeding as a "foreign main proceeding" will enhance and facilitate my ability to fulfill my duties as the Debtor's bankruptcy trustee to realize and distribute the assets of the Debtor in a fair and orderly manner, in accordance with Japanese insolvency laws. Specifically, foreign main recognition under Chapter 15 will advance my efforts by, among other things: (i) staying litigation against the Debtor in the United States pursuant to the automatic stay of section 362 of the Bankruptcy Code, as made applicable by section 1520(a)(1) of the Bankruptcy Code; (ii) providing protection of the assets and recoveries in the United States that I may realize for creditors; and (iii) providing a means to ensure that assets and recoveries in the United States will be distributed in an orderly and equitable manner through the Japan Proceeding in accordance with the Bankruptcy Act.

**EXHIBIT H**

## IV. THE PETITIONER AND THE JAPAN PROCEEDING MEET THE REQUIREMENTS OF "FOREIGN REPRESENTATIVE" AND "FOREIGN PROCEEDING" UNDER THE BANKRUPTCY CODE

### A. The Petitioner is a "Foreign Representative" Within the Meaning of Section 101(24) of the Bankruptcy Code

62.  I am advised by counsel that "foreign representative" is defined in section 101(24) of the Bankruptcy Code to mean:

> a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

63.  It is my opinion that my role as the bankruptcy trustee satisfies the above definition of "foreign representative." As the Debtor's court-appointed bankruptcy trustee, I am duly authorized and empowered by the Tokyo Court under the Bankruptcy Order to administer the liquidation of the Debtors' assets and affairs as well as to act as the duly authorized representative of the Japan Proceeding.

### B. The Japan Proceeding is a "Foreign Proceeding" Within the Meaning of Section 101(23) of the Bankruptcy Code

64.  I am advised by counsel that "foreign proceeding" is defined in section 101(23) of the Bankruptcy Code to mean:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the Debtors are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).

65.  It is my opinion that the Japan Proceeding satisfies the above definition of "foreign proceeding." The Japan Proceeding is a judicial proceeding under the supervision of the

26

**EXHIBIT H**

Tokyo Court, in which the rights of creditors vis-à-vis the Debtor will be determined. The Japan Proceeding was commenced pursuant to the Bankruptcy Act, which is a Japanese law relating to insolvency and the winding up of companies. Furthermore, the assets and affairs of the Debtor are subject to my full control and supervision as the court-appointed bankruptcy trustee, and my actions on behalf of the Debtor are subject to the supervision of the Tokyo Court for the purpose of liquidating the Debtor.

## V.   THE DEBTOR'S COMI IS IN JAPAN

66.   I am advised by counsel that, to obtain recognition of the Japan Proceeding as a "foreign main proceeding" under section 1502(4) of the Bankruptcy Code, it must be shown that Japan is the "center of main interests," or COMI, of the Debtors.

67.   I am further advised that an entity's COMI is equivalent to its principal place of business or central place of administration that is ascertainable by third parties. The Debtor's principal place of business is, and always has been, in Japan, and creditors and other third parties have been made aware of that fact. In addition, the Debtor has no place of business outside of Japan. I respectfully suggest that the following facts, among others, demonstrate that the Debtor's COMI is in Japan:

      a.    The Debtor is and has always been organized under the laws of Japan, and its registered office is and always has been located in Japan.

      b.    The Debtor's Head Office is and always has been located in Japan.

      c.    The Debtor's sole director and representative director, Mr. Karpeles, resides, and at all relevant times has resided, in Japan.

      d.    The Debtor's only business premises are physically located in Japan. The Debtor does not own, lease or maintain a place of business outside of Japan.

      e.    Most of the Debtor's bank accounts are located in Japan, including the primary account for operating its business.

**EXHIBIT H**

f.     The Debtor's books and records are located at its Head Office in Japan.

g.     The Debtor's parent company, Tibanne, provides operational and administrative services to the Debtor, including the provision of the Debtor's primary workforce, in Japan.

h.     The Debtor's Website clearly disclosed to customers and other third parties that the Debtor is a Japanese corporation that is located in Japan.

i.     The Debtor's Website directed customers to communicate with, and send verification documents to, the Debtor through a Tokyo address.

j.     The notices published on the Debtor's Website regarding the Japanese insolvency proceedings prominently identified the Debtor's Tokyo address and requested that inquiries regarding those proceedings be directed to a Call Center located in Tokyo with a Tokyo phone number, and which operates on Japan time.

k.     Upon the filing of the Japan Petition, the Debtor commenced an investigation in Japan with regard to the circumstances that led to the Japan Civil Rehabilitation, which investigation was subject to the oversight of the Tokyo Court.

68.     I am also advised by counsel that, to obtain recognition of the Japan Proceeding as a "foreign nonmain proceeding" under section 1502(5) of the Bankruptcy Code, it must be shown that such proceedings are pending in a country where the debtor has an "establishment." I am further advised that an "establishment" is any place of operations where the debtor carries out nontransitory economic activity. In the event that the Court does not recognize the Japan Proceeding as a foreign main proceeding, I refer the Court to the facts set forth above as demonstrating that the Debtor carries out nontransitory economic activity, and therefore has an establishment, in Japan.

**WHEREFORE**, I respectfully request that this Court enter an Order, substantially in the form attached to the Amended Petition as **Exhibit E**, granting the relief requested and such other and further relief as may be just and proper, and

**EXHIBIT H**

WHEREFORE, I declare under penalty of perjury under the laws of the United States of America that the foregoing is, to the best of my knowledge, information and belief, complete, true and correct.

Executed on this 23 of May, 2014
in Tokyo, Japan.

Nobuaki Kobayashi

29

EXHIBIT H

# Exhibit List

**Exhibit 1** – Bankruptcy Act of Japan (English translation of cited Articles)

**Exhibit 2** – MtGox Corporate Registry

**Exhibit 3** – Tibanne Corporate Registry

**Exhibit 4** – Agreement of Plan and Acquisition between Tibanne and McCaleb

**Exhibit 5** – Corporate Organizational Chart of MtGox

**Exhibit 6** – Japan Petition with English translation

**Exhibit 7** – Services Agreement between MtGox and Tibanne with English translation

**Exhibit 8** – 5 Steps to Create and Use a MtGox Account

**Exhibit 9** – General Questions Page of the MtGox Website as of May 1, 2013.

**Exhibit 10** – AML Account Statuses Page of the MtGox Website as of February 21, 2014

**Exhibit 11** – Terms of Use Page of the MtGox Website as of February 15, 2014

**Exhibit 12** – Privacy Policy Page of the MtGox Website as of February 15, 2014

**Exhibit 13** – About Us Page of the MtGox Website as of April 25, 2013

**Exhibit 14** – Disappearance Notice dated March 26, 2014

**Exhibit 15** – Examiner's Report Notice dated March 28, 2014

**Exhibit 16** – Debtor's Dismissal Notice dated April 16, 2014

**Exhibit 17** – Announcement of Provisional Administration and FAQs dated April 16, 2014

**Exhibit 18** – Announcement of Japan Proceeding and FAQs dated April 24, 2014

**Exhibit 19** – MtGox Articles of Incorporation

**Exhibit 20** – Announcement of Found Bitcoin dated March 20, 2014

**EXHIBIT H**