**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT**
**HINDS COUNTY, MISSISSIPPI**

**DR. DONALD RAGGIO**                                                                **PLAINTIFFS**
**DR. CHRIS RAGGIO**

**V.**                                                                **CIVIL ACTION NO. 14-71**

**MTGOX, Inc., a Delaware corporation;**
**CODE COLLECTIVE, LLC a New York Limited Liability Company;**
**JED McCALEB, an individual**                                        **DEFENDANTS**

<u>**AMENDED COMPLAINT**</u>
<u>**TRIAL BY JURY DEMANDED**</u>

COME NOW the Plaintiffs, Dr. Donald Raggio and Dr. Chris Raggio, and file this their claim for specific performance and damages regarding the purchase of bitcoins, and for cause would show the following, to-wit:

<u>**PARTIES**</u>

1.      Dr. Donald Raggio and Dr. Chris Raggio are adult resident citizens of Hinds County, Mississippi, residing in the  First Judicial District of Hinds County, Mississippi. The Raggios wired funds and purchased bitcoins from Defendants beginning in 2010.

2.      Defendant Jed McCaleb is an adult resident citizen of New York and on information and belief, he may be served with process of this court at 286 Union #1A, Brooklyn, NY 11211.  Jed McCaleb, at the relevant times herein was doing business in the State of Mississippi and the United States.

3.      Defendant Code Collective, LLC is a New York limited liability company who may be served with process of this court through its registered agent, New York Department of State and at its New York office located at 286 Union #1A, Brooklyn, NY

**EXHIBIT L**

11211. Defendant Code Collective, LLC conducted business throughout Mississippi and the United States.

4.      Defendant MTGOX, Inc. is a Delaware corporation. It is believed that this corporation was formed in 2013 and may be served with process of this court through its agent for service of process, National Corporate Research, LTD located at 615 S. Dupont Hwy, Dover, Delaware 19901. MTGOX, Inc.'s principal place of business is located at Level 15-F, Cerulean Tower, 26-1Sakuragaoka-cho, Shibuya-ku, Tokyo, Japan 150-8512.

## JURISDICTION AND VENUE

5.      This Court has personal jurisdiction and venue over Defendants in that they conducted business in this district and the State of Mississippi and the unlawful conduct alleged in the Complaint occurred in, was directed to and/or emanated from this district. Venue is proper in this district because a substantial part of the events or omissions giving rise to the unlawful conduct alleged in this complaint occurred in, was directed to and/or emanated from this district.

## FACTUAL ALLEGATIONS

### *The Raggios Purchase Bitcoins from MTGOX*

6.      In late 2010, Chris and Don Raggio (the "Raggios") signed up for an account on the MTGOX exchange. The purpose of MTGOX was the exchange and deposit of Bitcoin, a digital cryptocurrency. ("Bitcoin" with capitalization is commonly used to describe the concept of Bitcoin or the entire network itself while "bitcoins" are commonly used to describe the unit of account.) MTGOX was owned and operated by Defendants Jed McCaleb and Code Collective, LLC at the time the Raggios created their MTGOX account. Before creating a MTGOX account, Chris Raggio researched Defendant McCaleb,

**EXHIBIT L**

including several phone conversations with McCaleb, and relied on McCaleb's representations in forming the belief that MTGOX was a competent and reliable bitcoin exchange. On information and belief, the MTGOX website made similar representations as to the exchange's being a secure, trustworthy place to buy and sell bitcoins. The Raggios justifiably reposed their trust in Defendants to act as their fiduciary in holding their bitcoins safely and providing a secure exchange environment. The details of internet security were so technical that clients such as the Raggios had to rely on Defendants' representations.

7.      Around the time the Raggios signed up for a MTGOX account, there was no other avenue to make large purchases of bitcoins. This was part of the reason the Raggios chose MTGOX, along with Defendants' representations that it was a safe and reputable place to purchase bitcoins.

8.      In order to deposit money into the exchange, the Raggios would wire transfer United States dollars ("USD") from their bank in Jackson, Mississippi directly to Jed McCaleb's personal account. Once McCaleb received the wire transfer, he would personally credit the Raggios' MTGOX account with a USD balance in the same amount that the Raggios wired. The Raggios would use that USD to purchase bitcoins on the exchange. Each transaction on MTGOX included a transaction fee that inured to the benefit of MTGOX, McCaleb, and other Defendants.

9.      After the Raggios purchased bitcoins, their MTGOX account would reflect both their balance of bitcoins and their remaining USD balance. The Raggios relied on Defendants' express and implied representation that a MTGOX account was a reasonably secure medium for holding bitcoins. By providing such MTGOX accounts to buyers, MTGOX itself benefited, as these accounts were part of their protocol for profiting from

**EXHIBIT L**

transaction fees; further, while the bitcoins remained in MTGOX accounts, they were in the possession and control of MTGOX and McCaleb, ostensibly for the benefit of buyers like the Raggios. By providing such accounts to buyers, MTGOX represented that the bitcoins would be safe and assumed a duty to take reasonable measures to keep them safe.

10.     The Raggios would routinely remove their bitcoins from MTGOX. After purchasing the bitcoins, they would transfer them from MTGOX to their own personal bitcoin addresses or "wallets.". These addresses were completely independent of MTGOX. Due to MTGOX policy, they were prohibited from withdrawing more than $1,000 worth of USD or bitcoins per day (i.e. they could not transfer more than $1,000 worth of bitcoins out of MTGOX in a given 24-hour period). While the purchased bitcoins remained with MTGOX, they remained in the possession and control of MTGOX.

### The Theft of the Raggios' Bitcoins

11.     On January 9, 2011, Chris Raggio noticed unauthorized bitcoin withdrawals from their MTGOX account. On January 7, 3,134.8 bitcoins had been transferred out of their account. On January 8, another 3,174.6 bitcoins had been transferred out of their account. On January 9, another 3,096.93 bitcoins had been transferred out of their account. These three withdrawals totaled 9,406.33 bitcoins. The amounts of the withdrawals were such as to withdraw the maximum $1,000 worth of bitcoins allowed by MTGOX on each day.

12.     Contrary to explicit and implicit representations to the public and to the Raggios, MTGOX was operating with grossly unsophisticated security measures that fell far below the contemporary state of the art for an exchange holding valuable commodities such as bitcoins; these defective measures included, but were not limited to, using an unsalted

**EXHIBIT L**

MD5 protocol for security. This allowed a hack to compromise the Raggios' MTGOX account through no fault of the Raggios, in adddition to other inadequate security measures. Defendants knew that their security measures were inadequate but did not take steps to improve them or to warn clients such as the Raggios of the dangers.

13.     Immediately upon noticing the unauthorized bitcoin withdrawals, Chris Raggio notified McCaleb, and McCaleb initially advised him to seek out an individual in the Bitcoin community called Theymos in order to potentially track the stolen bitcoins. Chris Raggio also requested that McCaleb monitor the Bitcoin address where his bitcoins had been transferred (the "Unauthorized Address"). McCaleb's actions fell far below what a reasonable exchange operator should have done in response to an apparent hack. Futhermore, McCaleb did not provide the Raggios a list of the Internet Protocol ("IP") addresses that had accessed their MTGOX account, which McCaleb provided to other victims of hacks on MTGOX.

14.     The only immediate action McCaleb took was to freeze the Raggios' MTGOX account. McCaleb said he was going to log any IP addresses that attempted to login to the Raggios' MTGOX account in the hope that the person responsible for the unauthorized withdrawals would attempt to login to the Raggios' account again. On information and belief, the individual never attempted to login to the Raggios' account after the third unauthorized withdrawal.

15.     The stolen bitcoins were not the only bitcoins in the Raggios' MTGOX account. On January 17, 2011, McCaleb sent Chris Raggio the full amount of remaining bitcoins in the Raggios' MTGOX account to the Raggios' personal address.

**EXHIBIT L**

### *MTGOX Identifies the Thief, but Does Nothing on the Raggios' Behalf*

16.    On February 10, 2011, one month after the unauthorized withdrawals, McCaleb emailed Chris Raggio stating that he thought he had found the person responsible for the unauthorized withdrawals, that the user had enough bitcoins in his MTGOX account to repay Chris Raggio, and that he had frozen the user's MTGOX account. McCaleb also stated he wanted "to make sure I'm right before I do anything."

17.    On information and belief, McCaleb identified the other MTGOX user (the alleged thief) by linking transactions from the previously mentioned Unauthorized Address to the user's MTGOX account. The alleged thief went by the username "Baron" on MTGOX and on the online Bitcoin message board forums. However, McCaleb did not initially identify the alleged thief as Baron to Chris Raggio. Chris Raggio found out about Baron on the online Bitcoin message board forums.

18.    On or around February 11, 2011, McCaleb sold 88% of MTGOX to Mark Karpeles, and McCaleb retained 12% of MTGOX for himself. Despite representing to outside sources that McCaleb sold the entirety of MTGOX to Karpeles, McCaleb continued to play an integral role in MTGOX operations long after the sale date.

19.    On February 23, 2011, despite admitting no fault, Baron expressed to McCaleb a willingness to return $3,000 USD simply to make the situation go away.

20.    On February 26, 2011, McCaleb stated to Raggio in an email that "at the very least, this guy is going to give your coins back." McCaleb did not convey Baron's offer to pay $3,000. Further, McCaleb advised Raggio against recovering the bitcoins at this time, citing McCaleb's purported need to investigate further. Raggio relied on McCaleb's representation that his bitcoins would be returned. This representation was false. McCaleb

**EXHIBIT L**

had no intent to obtain cash or bitcoins from Baron and return them to the Raggios. Due to other hacks of MTGOX, the exchange was operating on a fractional reserve and would have been unable to pay out all its accounts had there been a run on the exchange. Making false representations to clients like the Raggios, and omitting highly material facts such as those set forth above, was part of Defendants' scheme to continue profiting from MTGOX without rectifying its defects, restoring the deficient bitcoin balance, or compensating hacked clients such as the Raggios.

21.     On March 5, 2011, Chris Raggio became aware of McCaleb's sale of MTGOX interest to Karpeles and asked if he should talk to McCaleb or Karpeles moving forward with the recovery of the stolen bitcoins. On March 6, 2011, McCaleb told Chris Raggio that Karpeles would be handling it.

22.     Chris Raggio and Mark Karpeles continued to communicate regarding the recovery of the stolen bitcoins, with Karpeles leading Raggio to believe that the stolen bitcoins would at some point be returned to the Raggios. This representation, upon which the Raggios reasonably relied, was false, as neither Karpeles nor McCaleb had any intent to return the bitcoins or otherwise make good on the Raggios' behalf.

### McCaleb and Karpeles Converted the Bitcoins to Their Own Use

23.     In January 2012, Chris Raggio retained counsel in Japan to investigate the matter and assist in recovery of the bitcoins. His Japanese counsel made a demand to Karpeles for the stolen bitcoin.

24.     In March 2012, Chris Raggio received a letter from Karpeles stating that he would not be returning the stolen bitcoins and that McCaleb was the responsible party. Karpeles claimed that he only purchased the assets of MTGOX and not the liabilities. This

**EXHIBIT L**

is the first time that either McCaleb or Karpeles ever gave any indication to the Raggios that their bitcoins would not be returned.

25.    On information and belief, the bitcoins in the Unauthorized Address were ultimately transferred to other Bitcoin addresses controlled by MTGOX. Therefore, the stolen bitcoins were eventually back in the control of either McCaleb or Karpeles.

26.    At all times leading up to the March 2012 letter from Karpeles, both McCaleb and Karpeles reassured Raggio that he would get his stolen bitcoins back. There was never a reason for Raggio to believe the stolen bitcoins would not be returned.

27.    On information and belief, at all relevant times, MTGOX was not fully solvent. Through mismanagement and hacks, the exchange had lost significant amounts of bitcoins and USD and was operating without a full reserve of bitcoins and USD. Furthermore, on information and belief, both McCaleb and Karpeles were aware of the insolvency at all relevant times. At no point did McCaleb or Karpeles ever notify the MTGOX users of this insolvency. Therefore, while representing to Raggio that they were working to return his bitcoins, McCaleb and Karpeles were, on information and belief, keeping the recovered bitcoins from the Unauthorized Address in the possession of MTGOX for their own use and benefit. At all relevant times, Defendants held out MTGOX to the public as a legitimate business, but in fact operated MTGOX without any regard for corporate formalities, frustrating the contractual expectations of Plaintiffs and other buyers, for the purposes of their fraudulent and wrongful misconduct, and thus abused the corporate form.

28.    Around the time he first conveyed an interest in MTGOX to Karpeles, McCaleb withdrew a large number of bitcoins into his personal account, some of which he

**EXHIBIT L**

dribbled back into MTGOX so that it could meet immediate obligations to clients. He retained a large number for himself, including bitcoins that were the rightful property of the Raggios, to whom McCaleb owed a duty to make whole from their loss of the hacked bitcoins. After McCaleb later sold the rest of his interest in MTGOX, McCaleb went on to found cryptocurrencies Ripple (XRP) and Stellar Lumens (XLM). He stated publicly that he had also sold all of his personal bitcoins to found these other cryptocurrencies. On information and belief, some of the bitcoins that were returned to MTGOX addresses, including some or all of those stolen from the Raggios, were commingled with McCaleb's personal bitcoins and used to fund Ripple and Stellar Lumens.

29.     After a falling out with the other founders of Ripple, McCaleb currently has a settlement agreement which entitles him to estimated nine billion (9,000,000,000) XRP (the cryptocurrency for Ripple). As of the time of this filing, XRP is valued at $0.292. Therefore, the estimated nine billion (9,000,000,000) XRP would have a current total value of approximately $2,628,000,000.

30.     Since the time the Raggios' bitcoins were stolen, Bitcoin has experienced several of what are called "hard forks." After a "hard fork," there exists two separate and distinct blockchains. These blockchains retain the exact same transaction history up to the moment of the hard fork, but each blockchain moving forward is completely independent of the other. As a result, much like a stock split, each address that existed prior to the hard fork now exists on the two separate blockchains, and it retains the exact same amount of cryptocurrency on each blockchain.

31.     One prominent hard fork was the Bitcoin Cash ("BCH") hard fork which occurred on August 1, 2017. For example, if an address contained 5 bitcoins on the Bitcoin

**EXHIBIT L**

blockchain prior to August 1, 2017, that address now contains 5 bitcoins on the Bitcoin blockchain and 5 BCH on the Bitcoin Cash blockchain.  As of the time of this filing, Bitcoin Cash is valued at $505.03. Therefore, the 9406.33 BCH would have a current total value of approximately $4,750,478.

32.     The Bitcoin Cash hard fork is not the only hard fork to occur. Because the Raggios' bitcoins were stolen prior to any of the prominent hard forks, they were deprived of the benefits due to them simply by owning bitcoins at the time of these hard forks.

## COUNT ONE:
## BREACH OF MISSISSIPPI UNIFORM COMMERCIAL CODE § 75-2-301

33.     Plaintiffs incorporate and adopt by reference each of the preceding paragraphs as fully set forth here.

34.     The Raggios paid Defendants in full for 9,406.33 bitcoins pursuant to a contract between the parties.

35.     In accordance with the Mississippi Uniform Commercial Code, Defendants were required "to transfer and deliver" the 9,406.33 bitcoins to the Raggios "in accordance with the contract."  Miss. Code Ann. § 75-2-301.

36.     Defendants failed "to transfer and deliver" the 9,406.33 bitcoins to the Raggios.  Despite repeated requests by the Raggios for delivery of the bitcoins and repeated assurances by Defendants that the bitcoins would be provided, Defendants never delivered the 9,406.33 bitcoins to the Raggios. Accordingly, Defendants have breached their obligations under Miss. Code Ann. § 75-2-301.

**EXHIBIT L**

## COUNT TWO:
### BREACH OF WARRANTY UNDER MISSISSIPPI
### UNIFORM COMMERCIAL CODE §§ 75-2-313, 314, AND/OR 315

37.    Plaintiffs incorporate and adopt by reference each of the preceding paragraphs as fully set forth here.

38.    Defendants represented that bitcoins purchased by the Raggios would be made available in a manner that allowed the Raggios to transfer the bitcoins to their personal address.  This representation was made affirmatively, through communications and contract documents; indirectly, through a description of Defendants' business, which involved selling bitcoins to persons who would then transfer the bitcoins out of the MTGOX exchange; and through prior transactions, whereby the Raggios purchased bitcoins and transferred them to their personal addresses, which served as a model for the bitcoin transaction at issue.  Based on this and other conduct and representations of Defendants, the contract between the Raggios and Defendants included an express warranty that the 9,406.33 bitcoins purchased by the Raggios would be made available in a manner that allowed the Raggios to transfer the bitcoins to the Raggios' personal address.  *See* Miss. Code Ann. § 75-2-313.

39.    Defendants were aware that the Raggios were relying on Defendants to make the 9,406.33 bitcoins purchased by the Raggios available in a manner that allowed the Raggios to transfer the bitcoins to the Raggios' personal address, as this was the parties' standard practice and the very purpose of Defendants' business.  Accordingly, the contract between Defendants and the Raggios included an implied warranty that the 9,406.33 bitcoins would be fit for this purpose—i.e., that Defendants would make the bitcoins

**EXHIBIT L**

available in a manner that allowed the Raggios to transfer the bitcoins to the Raggios' personal address. *See* Miss. Code Ann. § 75-2-315.

40.    As with all contracts for the sale of goods by a merchant, the contract between the Raggios and Defendants included an implied warranty of merchantability. This required, at minimum and without limitation, that the bitcoins be "fit for the ordinary purposes for which such goods are used" and "adequately contained [or] packaged." *See* Miss. Code Ann. § 75-2-314(2)(c), (e).

41.    Defendants failed to provide and/or secure the 9,406.33 bitcoins in a manner that permitted the Raggios to transfer the bitcoins to their personal address. Accordingly, Defendants breached the express and implied warranties set forth at Miss. Code Ann. §§ 75-2-313, -314, and/or -315.

## COUNT THREE:
## BREACH OF MISSISSIPPI UNIFORM COMMERCIAL CODE § 75-2-503

42.    Plaintiffs incorporate and adopt by reference each of the preceding paragraphs as fully set forth here.

43.    Defendants were required to make the 9,406.33 bitcoins purchased by the Raggios "available for the period reasonably necessary to enable the [Raggios] to take possession." *See* Miss. Code Ann. § 75-2-503(1)(a).

44.    Defendants failed to safeguard and make available the 9,406.33 bitcoins for a reasonable period of time to enable the Raggios to take possession and transfer the bitcoins to their personal address. Accordingly, Defendants breached their obligations under Miss. Code Ann. § 75-2-503.

**EXHIBIT L**

## COUNT FOUR:
## DEFENDANTS ARE LIABLE FOR LOSS OF BITCOINS
## UNDER MISSISSIPPI UNIFORM COMMERCIAL CODE § 75-2-509

45.    Plaintiffs incorporate and adopt by reference each of the preceding paragraphs as fully set forth here.

46.    Defendants bore all risk of loss of the 9,406.33 bitcoins until the Raggios received possession of the bitcoins.  *See* Miss. Code Ann. § 75-2-509(3).

47.    Defendants never delivered possession of the 9,406.33 bitcoins to the Raggios because the Defendants prohibited the Raggios from transferring the bitcoins to their personal address.  Accordingly, Defendants bore all risk that the bitcoins would be stolen.

## COUNT FIVE:
## BREACH OF DUTY AS SECURITIES INTERMEDIARY UNDER
## MISSISSIPPI UNIFORM COMMERCIAL CODE § 75-8-507

48.    Plaintiffs incorporate and adopt by reference each of the preceding paragraphs as fully set forth here.

49.    Defendants operated as a "securities intermediary" because they maintained a "securities account" on the MTGOX exchange for the benefit of the Raggios.  *See* Miss. Code Ann. §§ 75-8-105, -501.

50.    The Raggios had a "securities entitlement" to all bitcoins credited to their account on the MTGOX exchange, and were authorized to issue "entitlement orders" regarding the transfer of said bitcoins.  *See id*.

51.    Only the Raggios and their authorized representatives were permitted to issue entitlement orders to Defendants.  *See* Miss. Code Ann. §§ 75-8-107.

**EXHIBIT L**

52.     Defendants were required to comply with proper entitlement orders directing a transfer of the bitcoins.   *See* Miss. Code Ann. §§ 75-8-507(a).   Defendants were not permitted to transfer the bitcoins at the direction any other person.

53.     Where a securities intermediary such as Defendants "transfers a financial asset [i.e., bitcoins] pursuant to an ineffective entitlement order, the securities intermediary shall reestablish a security entitlement in favor of the person entitled to it, and pay or credit any payments or distributions that the person did not receive as a result of the wrongful transfer.   If the securities intermediary does not reestablish a security entitlement, the securities intermediary is liable to the entitlement holder for damages."  Miss. Code Ann. §§ 75-8-507(b).

54.     Defendants transferred or permitted a transfer of 9,406.33 bitcoins out of the Raggios' MTGOX account pursuant to an ineffective entitlement order.   Accordingly, Defendants are legally obligated to replace the 9,406.33 bitcoins or pay to the Raggios an amount not less than the current value of such bitcoins.

## COUNT SIX:
## BREACH OF CONTRACT

55.     Plaintiffs incorporate and adopt by reference each of the preceding paragraphs as fully set forth here.

56.     Defendants, individually and in concert, have created multiple written and implied contracts in dealing with the Raggios.  The Raggios acted in good faith by paying USD for 9,406.33 bitcoins, but Defendants have breached their contracts with Raggios to deliver said bitcoins.

57.     Plaintiffs entered into one or more agreements with Defendants whereby Defendants agreed, among other things, to do each of the following with respect to any

**EXHIBIT L**

monies deposited by Plaintiffs with Defendant Jed McCaleb and MTGOX, in consideration

for Plaintiffs' initial acquisition of the bitcoins from or via Defendants, and for the goodwill

associated with same and with the services offered:

   a.   to accept monies from Plaintiffs, in the form of bitcoins or USD, which

        Plaintiffs may deposit from time to time;

   b.   to keep said monies in a safe and secure manner, consistent with fiduciary

        obligations commonly imposed upon financial services providers;

   c.   to comply with instructions that Plaintiffs may provide from time to time

        concerning the transfer, investment and disposition of said monies; and

   d.   to permit Plaintiffs to withdraw their USD and bitcoins at any time.

Plaintiffs allege that the legal effect of these agreements was to create legally binding

obligations on the part of Defendants, individually and in concert.

   58.   Plaintiffs have performed all conditions, covenants, and promises required of

them by said agreements, and in accordance with the terms and conditions thereof.

   59.   Defendants, individually and in concert, breached the agreements by, among

other things: refusing to comply with Plaintiffs' intention of withdrawing the entirety of

their bitcoins; permitting the unauthorized withdrawal of their bitcoins; and by failing to

disburse the frozen bitcoins of Baron to replace those stolen. Thus Defendants caused

Plaintiffs to suffer damages, including but not limited to the loss of their bitcoins.

   60.   Defendants' breach was deliberate and in bad faith, such as to amount to a

tortious breach of contract in its own right, said tort being intentional, wanton, and willful,

and thus further making Defendants liable for punitive damages, in an amount sufficient to

**EXHIBIT L**

punish Defendants and to deter others from defrauding the public in such a manner, and for all reasonable attorney fees, expenses, and costs incurred by Plaintiffs in this civil action

## COUNT SEVEN:
## CONSPIRACY

61.     Plaintiffs incorporate and adopt by reference each of the preceding paragraphs as fully set forth here.

62.     Plaintiffs are informed and believe, and thereon allege, that each of the Defendants knowingly and willfully conspired and agreed upon themselves to hinder, delay and deprive the Raggios of their rights with respect to their 9,406.33 bitcoins.

63.     Plaintiffs are further informed and believe, and thereon allege, that said Defendants, individually and in concert, did the acts and things alleged herein pursuant to, and in furtherance of, the conspiracy and their own agreements with one another, and/or furthered the conspiracy cooperating with, lending aid to, encouraging, ratifying or adopting those acts.

64.     Plaintiffs are informed and believe, and thereon allege, that there is not yet any last overt act in furtherance of said conspiracy, in that Defendants, and all of them individually and in concert are continuing to hinder delay and deprive the Raggios of their rights with respect to said bitcoins.

## COUNT EIGHT:
## ACCOUNT STATED

65.     Plaintiffs incorporate and adopt by reference each of the preceding paragraphs as fully set forth here.

66.     Between 2011 and 2012, accounts were stated in writing between the Plaintiffs on the one hand, and Defendants, on the other hand.  Although Defendants have

**EXHIBIT L**

acknowledged and verified the total number of bitcoins, they have not delivered the 9,406.33 bitcoins purchased and paid for by Plaintiffs.  The remaining unreturned portions of said accounts, according to the records of Defendants and Plaintiffs, total approximately 9,406.33 bitcoins as of the date of this complaint, which is now due and owing and which Defendants should pay.

67.    Defendants, individually and in concert have failed and refused and continue to fail and refuse to return the remainder of the bitcoins, despite Plaintiffs' demands that they do so.  Thus, they owe the remaining 9,406.33 bitcoins and prejudgment and post judgment interest thereon at the maximum legal rate.

## COUNT NINE:
## NEGLIGENCE AND GROSS NEGLIGENCE

68.    Plaintiffs incorporate and adopt by reference each of the preceding paragraphs as fully set forth here.

69.    At all relevant times, Defendants, individually and in concert, had bitcoins belonging to Plaintiffs in their possession, custody and/or control, and therefore owed Plaintiffs a duty of care with respect to safeguarding said bitcoins.  Plaintiffs are informed and believed, and thereon allege, that Defendants, individually and in concert, served as fiduciaries with respect to said bitcoins, and that said role imposed certain fiduciary obligations upon Defendants.

70.    Plaintiffs are informed and believe, and thereon allege, that Defendants, individually and in concert, breached their duties to Plaintiffs by negligently performing their obligations, including but not limited to failing to utilize all reasonable and practical safeguards to protect the bitcoins of Plaintiffs and other customers. This allowed a hackto compromise the Raggios' MTGOX account.

**EXHIBIT L**

71.     Plaintiffs suffered certain general, special, incidental and consequential damages as a direct and proximate result of said negligence, including, among other things: the loss of bitcoins; the loss of use of said value of the bitcoins while the present action is pending; changes in the value of said bitcoins due to the fluctuating exchange rate; the necessity of retaining legal counsel to vindicate their rights; etc., all in amounts to be proven at trial.

72.     Further, Defendants' negligence was so willful and wanton as to amount to gross negligence, thus entitling Plaintiffs to punitive damages in an amount sufficient to punish Defendants and to deter others from defrauding the public in such a manner, and to all reasonable attorney fees, expenses, and costs incurred by Plaintiffs in this civil action

## COUNT TEN:
## CONVERSION

73.     Plaintiffs incorporate and adopt by reference each of the preceding paragraphs as fully set forth here.

74.     At all relevant times, Plaintiffs were, and are, the lawful owners of certain bitcoins deposited with Defendants, individually and in concert, as alleged herein.  Plaintiffs were entitled to possession of the bitcoins once purchased.

75.     Plaintiffs are informed and believe and thereon allege that: upon receiving Plaintiffs' instructions to deliver the bitcoins, Defendants, individually and in concert, converted and took unlawful possession of said bitcoins for their own use and benefit by refusing to return all of the bitcoins paid for and belonging to Plaintiffs.  Plaintiffs are further informed and believe and allege that Defendants intentionally and willfully refused to deliver the bitcoins purchased by Plaintiffs.

**EXHIBIT L**

76.     Plaintiffs have suffered certain general, special, incidental and consequential damages as a direct and proximate result of said negligence, including, among other things: the loss of the bitcoins themselves; the loss of use of said bitcoins while the present action is pending; changes in the value of said bitcoins due to fluctuating exchange rates; etc., all in amounts to be proven at trial. Due to the fluctuating nature of bitcoins, Plaintiffs cannot be made whole by being repaid the value of the bitcoins at the time of their conversion. Plaintiffs seek either return of comparable bitcoins or the present cash value of their bitcoins, including all value bestowed by hard forks subsequent to the conversion.

77.     Plaintiffs are informed and believe, and thereon allege: that the aforementioned actions and omissions by Defendants, individually and in concert, were intentional or so grossly wanton and willful that they show a conscious disregard for the rights of Plaintiffs.  Defendants subjected Plaintiffs to a cruel and unusual hardship in conscious disregard of their rights, all so as to justify an award for exemplary and punitive damages, in an amount sufficient to punish Defendants and to deter others from defrauding the public in such a manner, and for all reasonable attorney fees, expenses, and costs incurred by Plaintiffs in this civil action.

## COUNT ELEVEN:
## GENERAL AND NOTICE PLEADING OF ALL CAUSES AT LAW & EQUITY AND CLAIM FOR A CONSTRUCTIVE TRUST ON CORPORATE ACCOUNTS

78.     Plaintiffs incorporate and adopt by reference each of the preceding paragraphs as fully set forth here.

79.     Plaintiffs pray that this court will hear their cause as the facts herein have been plead with specificity and allow Plaintiffs recovery of their bitcoins and all damages generally and specifically under all applicable theories of recovery whether at law or equity.

**EXHIBIT L**

80. On information and belief, Defendant McCaleb commingled the Raggios' and MTGOX account holders' fiat currency and bitcoins with his own personal bank account and Bitcoin wallet, making it impossible to determine which amounts were personal and which amount belonged to MTGOX account holders. Defendant McCaleb used the Raggios' and account holders' funds for operating expenses at MTGOX and for his own personal benefit. Upon the sale of a majority interest to Mark Karpeles, Defendant McCaleb used the embezzled cash and bitcoins to fund his new ventures, such as Open Coin, Ripple, Stellar and Light Year. Plaintiffs request that this court freeze said corporate accounts so that funds may not be distributed until such time as the Raggios have had an opportunity to be heard and to lay proper claim to their bitcoins or materially similar bitcoins, which, as set forth above, Defendants obtained or hold by abuse of confidence, commission of wrong, and unconscionable conduct, artifice, concealment, and questionable means, and generally against equity and good conscience, such that they hold said bitcoins in a constructive trust for Plaintiffs.

81. Further, on information and belief, Defendants used some or all of Plaintiffs' bitcoins, or of comparable bitcoins which in right and equity should have been given to Plaintiffs in restoration or compensation for the bitcoins Defendants allowed or caused to be unlawfully taken, to invest in and facilitate the creation or propagation of new or alternative cryptocurrencies, from which Defendants have reaped large profits, contrary to the rule of equity that no one should profit from his own wrongdoing. Those profits are held in a constructive trust for Plaintiffs. Defendants should be required to disgorge the appropriate share of those unjustly and inequitably-acquired profits and pay them over to Plaintiffs,

**EXHIBIT L**

whose bitcoins were used against their consent and in violation of law and against equity and good conscience to further the schemes of Defendants.

## COUNT TWELVE:
## SPECIFIC PERFORMANCE

82.     Plaintiffs incorporate and adopt by reference each of the preceding paragraphs as fully set forth here.

83.     Plaintiffs paid for 9,406.33 bitcoins with U.S. dollars. Defendants have represented that they will deliver said 9,406.33 bitcoins.  Plaintiffs request a judgment of and from Defendants, individually and in concert, for 9,406.33 bitcoins with UTXOs that predate the Bitcoin Cash (August 1, 2017) and Bitcoin Gold (October 24, 2017) hard forks. No other remedy will make Plaintiffs whole.

## COUNT THIRTEEN:
## UNJUST ENRICHMENT

84.     Plaintiffs incorporate and adopt by reference each of the preceding paragraphs as fully set forth here.

85.     At all relevant times, Plaintiffs were, and are, the lawful owners of certain bitcoins deposited with Defendants.  As between Plaintiffs and Defendants, Plaintiffs were entitled to possession of the bitcoins once they provide instructions to Defendants to deliver them, which Plaintiffs have done.

86.     Plaintiffs are informed and believe and thereon allege that: upon receiving Plaintiffs' instructions to deliver the bitcoins, Defendants, individually and in concert, converted and took unlawful possession of, said bitcoins for their own use and benefit by refusing to return all of the bitcoins paid for and belonging to Plaintiffs. Plaintiffs are further informed and believe, and thereon allege, that Defendants, individually and in concert,

**EXHIBIT L**

intentionally, willfully and in flagrant disregard for Plaintiffs' right refused to deliver the bitcoins purchased by Plaintiffs.

87.     The circumstances render the Defendants' retention of the Plaintiffs' property inequitable and the Defendants have been unjustly enriched by the retention of the Plaintiffs' property.

88.     The Plaintiffs are entitled to damages as a result of the Defendants' unjust enrichment, including the disgorgement of all bitcoins retained by the Defendants, the proceeds for any sale of the bitcoins, all profits received from the invested monies of which profits were received through the conversion of the Plaintiffs' bitcoins, any and all hard forked cryptocurrencies which would be or was received, and any other equitable remedy so available to the Plaintiffs.

## COUNT FOURTEEN:
## BAILMENT

89.     Plaintiffs incorporate and adopt by reference each of the preceding paragraphs as fully set forth here.

90.     Both at common law and under statute, Defendants acted as bailees for the bitcoins purchased by Plaintiffs, and voluntarily agreed for Plaintiffs to give those bitcoins to them for safekeeping, taking possession but not ownership thereof, for the mutual benefit of bailors and bailees. Defendants failed to exercise the required level of care, such that Plaintiffs' bitcoins were stolen while in Defendants' custody, and Defendants are thus liable to Plaintiffs for return of the bitcoins or materially similar ones, there being no other remedy that will make Plaintiffs whole. In the alternative, Defendants should be required to pay over the present cash value of materially similar bitcoins, including the value of the intervening hard forks.

**EXHIBIT L**

91.     Defendants were grossly negligent in mishandling the bitcoins and failing to exercise the minimal reasonable standard of care for a cryptocurrency exchange, and are thus liable for punitive damages for their wanton and deliberate misconduct, in an amount sufficient to punish Defendants and to deter others from defrauding the public in such a manner, and for all reasonable attorney fees, expenses, and costs incurred by Plaintiffs in this civil action.

## COUNT FIFTEEN:
## FRAUD

92.     Plaintiffs incorporate and adopt by reference each of the preceding paragraphs as fully set forth herein.

93.     At all times, including in the specific time, place, and manner alleged in the foregoing, Defendants made intentionally false representations to Plaintiffs, including but not limited to that they would keep Plaintiffs' bitcoins safe; that they were providing a safe means for the holding of bitcoins purchased from MTGOX; and that they were diligently investigating the theft of the Raggios' bitcoins with the intent of restoring them to the Raggios or otherwise making good on the theft. Despite their duty to Plaintiffs to keep their bitcoins reasonably safe and to take reasonable measures to recover the stolen bitcoins, Defendants omitted the material facts that MTGOX was not a secure exchange, that Plaintiffs' bitcoins were not reasonably safe in MTGOX accounts, and that Defendants were not in fact diligently investigating the theft of the bitcoins, but rather were seeking to convert them to their own use and benefit. All of these misrepresentations and omissions were material, on the facts set forth above. The Raggios reasonably relied on these

**EXHIBIT L**

representations and suffered harm thereby as a direct and proximate result, including but not limited to the loss of their bitcoins.

94.     Defendants are therefore liable to Plaintiffs for their economic damages incurred, in such an amount as to put Plaintiffs in the same position as if their bitcoins had not been stolen, as well as for punitive damages in an amount sufficient to punish Defendants and to deter others from defrauding the public in such a manner, and for all reasonable attorney fees, expenses, and costs incurred by Plaintiffs in this civil action.

## COUNT SIXTEEN:
## NEGLIGENT MISREPRESENTATION

95.     Plaintiffs incorporate and adopt by reference each of the preceding paragraphs as fully set forth herein.

96.     As set forth above, Defendants made numerous material misrepresentations to Plaintiffs as well as omitting material facts of high importance, including but not limited to MTGOX's being a secure cryptocurrency exchange when in fact it was not, and to their diligently investigating the theft of the Raggios' bitcoins in an effort to restore them to the Raggios, when in fact they were not. In making these misrepresentations or omissions, Defendants failed to act with the degree of diligence which the public is entitled to expect of the operators of a cryptocurrency exchange. Plaintiffs reasonably relied on those misrepresentations and reasonably relied on Defendants not to omit material facts, and suffered damages as a direct and proximate result, including but not limited to the loss of their bitcoins.

97.     Defendants are therefore liable to Plaintiffs for their economic damages incurred, in such an amount as to put Plaintiffs in the same position as if their bitcoins had

**EXHIBIT L**

not been stolen. Further, Defendants' negligence was so wanton and willful as to amount to gross negligence, thus entitling Plaintiffs to punitive damages in an amount sufficient to punish Defendants and to deter others from defrauding the public in such a manner, and for all reasonable attorney fees, expenses, and costs incurred by Plaintiffs in this civil action.

### COUNT SEVENTEEN:
### PUNITIVE DAMAGES

98.     Plaintiffs incorporate and adopt by reference each of the preceding paragraphs as fully set forth herein.

99.     The actions of Defendants, individually and/or collectively, were done without a legitimate or arguable reason, and knowingly, willfully, maliciously, and intentionally and/or with reckless disregard for the rights of the Raggios evidencing bad faith on the part of each Defendants, and entitling the Raggios to punitive damages, in an amount to be determined at the trial of this matter, to punish Defendants and to deter others from engaging in the same or similar activities.

### COUNT EIGHTEEN:
### CORPORATE OFFICER LIABILITY

100.     Plaintiffs incorporate and adopt by reference each of the preceding paragraphs as fully set forth herein.

101.     By participating directly in the misconduct and wrongdoing set forth above, Defendant McCaleb incurred personal liability for all wrongdoing committed by or on behalf of MTGOX, and is liable to Plaintiffs for all damages pleaded herein.

### COUNT NINETEEN:
### PIERCING THE CORPORATE VEIL

102.     Plaintiffs incorporate and adopt by reference each of the preceding paragraphs as fully set forth herein.

**EXHIBIT L**

103.    As alleged above, Defendants abused the corporate form of MTGOX, flagrantly disregarding corporate formalities, in the pursuit of fraudulent and wrongful misconduct, and thus frustrating the legitimate expectations of Plaintiffs and other buyers who regarded MTGOX as a legitimate cryptocurrency exchange rather than as a scam operated for the exclusive benefit of Defendants. Defendants are thus personally liable to Plaintiffs for all damages pleaded herein.

## COUNT TWENTY:
## BREACH OF FIDUCIARY DUTY

104.    Plaintiffs incorporate and adopt by reference each of the preceding paragraphs as fully set forth herein.

105.    Defendants held themselves out to the Raggios and to the public as operating a safe, secure bitcoin exchange. After the Raggios' account was hacked, McCaleb held himself out to the Raggios as using his peculiar knowledge as the MTGOX operator to investigate the theft and to make good their loss. Under those circumstances, the Raggios reasonably and justifiably reposed their trust in Defendants and depended upon them to make good on their representations.

106.    Thus, Defendants owed the Raggios a fiduciary duty to keep their bitcoins secure and to make good on any loss due to Defendants' own wrongful deeds and omissions. Defendants breached that duty, causing the Raggios to incur damages as set forth above. Defendants are therefore liable to the Raggios for all damages arising from this breach.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that this court will allow their claim to proceed before a jury and that said jury shall award them their 9,406.33 bitcoins (with UTXOs predating the August 1, 2017, Bitcoin Cash hard fork) against

**EXHIBIT L**

Defendants, or else money damages sufficient to compensate them for their lost bitcoins and their lost profits and business opportunities following foreseeably, consequentially, and proximately from Defendants' misconduct, thus placing them in the position they would have been in had Defendants' misconduct not occurred and all of them individually and jointly; along with punitive damages, special damages as set forth above, reasonable attorney fees and expenses, all costs herein related to the pursuit of this cause, and any other remedy as to which the Plaintiffs may be entitled.

Respectfully submitted, this 18th day of September, 2018.

> **DR. DONALD RAGGIO**
> **DR. CHRIS RAGGIO**
>
> By:     *s/ Armin J. Moeller, Jr.*
> Armin J. Moeller, Jr.,  MSB No. 3399
> Walter H. Boone, MSB No. 8651
> Christine Crockett White, MSB No. 10107
> Jonathan P. Dyal, MSB No. 99146
> Andy Lowry, MSB No. 100782
> Patrick Everman, MSB No. 104870
> Perry P. Taylor, MSB No. 104944
>
> ATTORNEYS FOR PLAINTIFFS
> DR. DONALD RAGGIO AND
> DR. CHRIS RAGGIO

OF COUNSEL:

BALCH & BINGHAM LLP
188 East Capitol Street, Suite 1400
Jackson, MS 39201-2608
Telephone: (601) 961-9900
Fax: (601) 961-4466
wboone@balch.com
cwhite@balch.com
alowry@balch.com

**EXHIBIT L**

BALCH & BINGHAM LLP
1310 Twenty Fifth Avenue
Gulfport, MS 39501
Telephone: (228) 864-9900
Fax: (228) 864-8221
jdyal@balch.com

**EXHIBIT L**

<u>CERTIFICATE OF SERVICE</u>

I, the undersigned counsel, do hereby certify that on this day, I have electronically filed the foregoing with the Clerk of the Court using the MEC   system which sent notification of such filing to the following (except as otherwise shown, in which case service was made via United States mail, postage prepaid):

> Edwin S. Gault, Jr., Esq.
> Amanda B. Robinson, Esq.
> T. Peyton Smith, Esq.
> Forman Watkins & Krutz LLP
> P.O. Box 22608
> Jackson, Mississippi 39201
> Win.Gault@formanwatkins.com
> Peyton.Smith@formanwatkins.com
> Mandi.Robinson@formanwatkins.com

> Ethan Jacobs, Esq.                *(via U.S. mail)*
> Holland Law, LLP
> 220 Montgomery Street, Suite 800
> San Francisco, California 94104

So certified, this the 18th day of September, 2018.

> *s/ Armin J. Moeller, Jr.*
> ARMIN J. MOELLER, JR.

**EXHIBIT L**