**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| GREGORY GREENE, individually and on behalf of all others similarly situated, | Case No. 1:14-cv-1437 |
| *Plaintiff,* | |
| v. | |
| MTGOX INC., a Delaware corporation, MT. GOX KK, a Japanese corporation, TIBANNE KK, a Japanese corporation, and MARK KARPELES, an individual, | |
| *Defendants.* | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Gregory Greene ("Greene") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendants MtGox Inc., Mt. Gox KK, Tibanne KK, and Mark Karpeles (collectively referred to in the singular as "Mt. Gox") to challenge its intentional and systematic misuse and misappropriation of its users' property. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### NATURE OF THE ACTION

1.       In just a short period of time, hundreds of millions of dollars worth of a new form of digital currency known as "Bitcoin" belonging to the members of the Classes has disappeared. This catastrophic loss has not only revealed the instability of a burgeoning new industry, it has also uncovered a massive scheme to defraud millions of consumers into providing a private company with real, paper money in exchange for virtual currency. To help understand this

**EXHIBIT W**

scheme, a brief introduction to the Bitcoin industry follows.

2.      Bitcoin is a form of digital currency that was created in early 2009.[1] Unlike traditional money, bitcoins aren't issued from a government and aren't regulated by any central authority. Instead, bitcoins can be created by any person with specialized hardware and computer software and then sold to other consumers on the Internet via private companies, called "Bitcoin exchanges" (like Mt. Gox).

3.      Founded in 2009, Mt. Gox claims to have become the world's largest Bitcoin exchange. In other words, Mt. Gox has become the largest digital marketplace where individuals can buy and sell bitcoins and also exchange them for traditional currencies (like the United States Dollar). Mt. Gox has also become one of the largest "digital wallets," meaning that users can deposit and store their bitcoins and the keys (passwords) necessary to access them on Mt. Gox's servers.

4.      Unfortunately, while it was relatively easy to join the Mt. Gox exchange and deposit cash and bitcoins, withdrawing one's money or bitcoins has become impossible. In early February 2014, Mt. Gox halted all withdrawals from its website due to a supposed computer bug. Over the next few weeks, reports began to reveal that the so-called "computer bug" afflicting Mt. Gox's servers may have actually been a several-year long security breach that resulted in the pilfering of millions of dollars worth of its users' bitcoins. Not surprisingly, after this news broke, the price of bitcoins plummeted, creating a disruptive ripple effect that has nearly shut down the industry and left Mt. Gox users unable to trade bitcoins and cut their losses against a falling market.

---

[1]      For the sake of clarity, "Bitcoin" refers to the digital currency and "bitcoin" (with a lower case "b") refers to an individual unit of the currency itself.
[2]      Business Plan MtGox 2014-2017, http://www.scribd.com/doc/209535200/Business-Plan-MtGox-2014-2017 (last accessed February 27, 2014).

**EXHIBIT W**

5.      In addition to these devastating effects, the security breach also revealed that Mt. Gox intentionally and knowingly failed to provide its users with the level of security protection for which they paid. To make matters even worse, the supposed security breach also supposedly prompted Mt. Gox to shut down its services, which has resulted in the loss of millions of dollars worth of its users' bitcoins. Plaintiff Greene is just one consumer who had bitcoins and keys stored with Mt.Gox who has lost money as a result of Mt. Gox's conduct. Accordingly, Greene brings suit on behalf of himself and all others similarly situated, to seek both monetary and equitable relief for Mt. Gox's deceptive and unlawful conduct.

## PARTIES

6.      Plaintiff Gregory Greene is a natural person and citizen of the State of Illinois.

7.      Defendant MtGox Inc. is a corporation existing under the laws of the State of Delaware with its principal place of business located at Level 15-F, Cerulean Tower, 26-1 Sakuragaoka-cho, Shibuya-ku, Tokyo, Japan 150-8512. MtGox Inc. conducts business throughout this District, the State of Illinois, and the United States. MtGox Inc. is registered with the Financial Crimes Enforcement Network (United States Department of the Treasury) as entity number 31000029348132. Additionally, it is registered as a Money Services Business ("MSB") to conduct MSB Activities in the State of Illinois.

8.      Defendant Mt. Gox KK is a Japanese corporation with its principal place of business located at Level 15-F, Cerulean Tower, 26-1 Sakuragaoka-cho, Shibuya-ku, Tokyo, Japan 150-8512. Mt. Gox KK conducts business throughout this District, the State of Illinois, and the United States. Mt. Gox KK is a parent of MtGox Inc. and conducts business in the United States directly by and through MtGox Inc.

9.      Defendant Tibanne KK is a Japanese corporation with its principal place of

**EXHIBIT W**

business located at Level 15-F, Cerulean Tower, 26-1 Sakuragaoka-cho, Shibuya-ku, Tokyo,

Japan 150-8512. Tibanne KK conducts business throughout this District, the State of Illinois, and

the United States. Tibanne KK is a parent of Mt. Gox KK and conducts its business in the United

States directly by and through MtGox Inc.

10.     Defendant Mark Karpeles serves as the Chief Executive Officer of MtGox Inc.,

Mt. Gox KK, and Tibanne KK. Additionally, Mr. Karpeles is the sole shareholder of all three

companies. Based on Defendants' own statements, "Mark Karpeles is the President and CEO of

both MtGox and Tibanne. Mark providers [sic] overall direction, responsible for supervising

main operations and steering the company according to his vision".[2] Mr. Karpeles was

personally and intimately involved in the fraudulent conduct, theft, and breaches of fiduciary

duties described in this Complaint.

11.     Defendants act in direct concert and as a single unified entity under the brand

name "Mt. Gox." MtGox Inc., Mt. Gox KK, Tibanne KK, and Mark Karpeles are

indistinguishable as separate entities as all three corporations are maintained for a singular

purpose (operation of the Mt. Gox Bitcoin exchange), and Mr. Karpeles is the sole shareholder of

all three companies.

12.     Mt. Gox operated its Bitcoin exchange through the website www.mtgox.com,

which operates from servers located in the Commonwealth of Massachusetts (IP address

23.198.168.44).

### JURISDICTION AND VENUE

13.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2),

because (i) at least one member of the Classes, both of which consist of over 100 persons, is a

---

[2]     Business Plan MtGox 2014-2017, http://www.scribd.com/doc/209535200/Business-Plan-MtGox-2014-2017 (last accessed February 27, 2014).

**EXHIBIT W**

citizen of a different state than Defendants, (ii) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) none of the exceptions under that subsection apply to this action.

14.    This Court has personal jurisdiction over Defendants because they conduct business in this District, and the unlawful conduct alleged in the Complaint occurred in, was directed to, and/or emanated from this District.

15.    Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the unlawful conduct alleged in the Complaint occurred in, was directed to, and/or emanated from this District.

## COMMON FACTUAL ALLEGATIONS

### I.    An Overview of the Bitcoin Market.

16.    Introduced in early 2009, Bitcoin has quickly become a recognized form of digital currency.

17.    Just like paper money (*e.g.*, Dollars, Euros, etc.) (commonly known as "Fiat Currency"), bitcoins can be used to purchase and sell goods and services through a number of websites or from any merchant that accepts them. However, that's where the similarities end. For instance, with "paper money, a government decides when to print and distribute [it]."[3] Bitcoin, on the other hand, is a currency that is not issued or directly regulated by any central authority or government. Instead, bitcoins are created by individuals through a complex computer program and then bought and sold to consumers through private "exchanges."[4] The price of bitcoins

---

[3]    Bitcoin Mining, http://www.bitcoinmining.com/ (last accessed February 26, 2014).

[4]    By way of background, there are three primary ways to obtain bitcoins: mining new ones (meaning creating new bitcoins using specialized computer hardware and software), accepting them for goods and services, and buying them on an exchange (like Mt. Gox).

**EXHIBIT W**

fluctuate on these exchanges just like any other currency market.

## II.    Mt. Gox's Bitcoin Exchange.

18.    Mt. Gox claims to operate the "world's most established Bitcoin exchange" that

handles "over 80% of all Bitcoin trade" worldwide.[5] Mt. Gox boasts that it has become the leader

in Bitcoin exchanges because its purported ability to allow consumers to "quickly and securely

trade bitcoins with other people around the world with your local currency."[6]

19.    To trade bitcoins using Mt. Gox's service, a consumer must sign up for an

account with it at www.mtgox.com. Once registered, users are required to verify their accounts

by providing Mt. Gox with detailed information such as the user's full name, date of birth,

country of birth, physical address, and proof of identity (such as a state issued identification

card).

20.    Once the registration process is complete, users can start "trading" Bitcoins using

Mt. Gox's online trading platform.

21.    Alternatively, Mt. Gox also provides users "with the ability to securely store

Bitcoins in a virtual 'vault' for safe keeping."[7]

22.    When a consumer registers for an account, Mt. Gox expressly promises and

represents that its website is "always on" and that users can "[b]uy and sell Bitcoin 24/7/365 with

---

[5]    Archive of Mt. Gox's homepage, http://xena.ww7.be/wsj/Mt.Gox%20-
%20Bitcoin%20Exchange.html (last accessed February 26, 2014).

[6]    Archive of Mt. Gox's homepage, http://xena.ww7.be/wsj/Mt.Gox%20-
%20Bitcoin%20Exchange.html (last accessed February 26, 2014).

[7]    Mt. Gox About Us, www.mtgox.com/about-us (last accessed December 4, 2013).

**EXHIBIT W**

the world's most sophisticated trading platform."[8]

23. Unfortunately for consumers, Mt. Gox has seriously failed to deliver on these promises.

### III. Mt. Gox Freezes its Users' Accounts Without Notice and Then Shuts Down its Website.

24. In early February 2014, Mt. Gox halted its users' ability to withdrawal any form of currency from its website while it purportedly investigated a "bug" or "technical malfunction" in the Bitcoin network, but still allowed users to trade bitcoins.[9]

25. Not surprisingly, the market reacted quickly to this news and the price of bitcoins fell.[10] Unfortunately, because withdrawals were frozen, Mt. Gox users like Plaintiff and the members of the Classes could not withdraw funds as the price plummeted. Even if users traded during this time period, the resulting money remained trapped within Mt. Gox and, eventually, became entirely inaccessible once Mt. Gox shut down completely.

26. Setting aside the fact that users couldn't even attempt to salvage their bitcoins during this time—as Mt. Gox left its users' accounts frozen—any remaining vestiges of Mt. Gox (including its Chief Executive Officer, Mark Karpeles) began to quickly disappear. Specifically, on or around February 23, 2014, Mt. Gox's social media webpage went offline, its website (www.mtgox.com) shut down, and Karpeles stepped down from the board of directors at the

---

[8] Archive of Mt. Gox's homepage, http://xena.ww7.be/wsj/Mt.Gox%20-%20Bitcoin%20Exchange.html (last accessed February 26, 2014).

[9] Bitcoin Price Plunges as Mt. Gox Exchange Halts Activity, http://www.bloomberg.com/news/2014-02-07/bitcoin-price-falls-as-mt-gox-exchange-halts-activity.html (last accessed February 27, 2014).

[10] Bitcoin Price Plunges as Mt. Gox Exchange Halts Activity, http://www.bloomberg.com/news/2014-02-07/bitcoin-price-falls-as-mt-gox-exchange-halts-activity.html (last accessed February 27, 2014).

EXHIBIT W

Bitcoin Foundation, the Bitcoin currency advocacy group.[11]

27.     Shortly thereafter, media outlets around the world began reporting that Mt. Gox had actually shut down due to a security breach that went unnoticed for *years*, which resulted in the loss of hundreds of millions of dollars worth of its users' bitcoins (approximately 744,000 of them).[12]

28.     As a result of Mt. Gox "going dark" and shutting down its entire operation, users' Fiat Currency and bitcoins previously stored by Mt. Gox are now unavailable to them, and by all accounts, have been converted and captured by Mt. Gox for its own purposes. On information and belief, Mr. Karpeles, as the sole shareholder of Mt. Gox, personally profited by shutting down Mt. Gox and obtaining users' Fiat Currency and bitcoins worth millions of dollars. Mr. Karpeles was and is aware of the conduct and security problems underlying the widespread loss of bitcoins, and was and is aware that he and his co-defendants were wrongfully obtaining bitcoins and Fiat Currency by shutting down the Mt. Gox exchange and capturing its users' property. Mr. Karpeles personally participated in, and had direct control over, Mt. Gox's public statements, the design and development of its website, the maintenance of its hardware and software, its customer service, banking regulatory affairs, interactions with government entities, and events leading to the loss of its users' bitcoins and Fiat Currency and the closing of the Mt. Gox exchange. On information and belief, Mr. Karpeles was personally responsible for making the decision to shut down Mt. Gox without releasing any of Plaintiff's or the putative Classes'

---

[11]     Survival of Bitcoin Exchange in Mt. Gox in Doubt, http://money.cnn.com/2014/02/24/technology/security/mtgox-bitcoin/ (last accessed February 27, 2014).

[12]     Bitcoin's Mt. Gox Goes Offline, Loses $409M – Recovery Steps and Taking Your Tax Losses, http://www.forbes.com/sites/cameronkeng/2014/02/25/bitcoins-mt-gox-shuts-down-loses-409200000-dollars-recovery-steps-and-taking-your-tax-losses/ (last accessed February 27, 2014).

**EXHIBIT W**

bitcoins or Fiat Currency.

## IV.    Facts Relating to Plaintiff Gregory Greene.

29.    In late 2011, while searching the Internet for a Bitcoin exchange, Plaintiff Greene navigated to Mt. Gox's website (www.mtgox.com) and read its advertisements and representations about its service, including its representations about the exchange's security, reliability, and ability to withdraw or deposit bitcoins at any time—substantially similar to the advertisements and representations described in Section II above.

30.    Relying upon these representations made to him by Mt. Gox on its website when he registered his account—namely, that Mt. Gox would allow him to "quickly and securely trade bitcoins with other people around the world," give him "the ability to securely store [his] Bitcoins in a virtual 'vault' for safe keeping," and allow him to access his bitcoins "at any time"—Greene signed up for an account on Mt. Gox's website, transferred United States Dollars into the account, and then used Mt. Gox's services to convert those funds into bitcoins.

31.    As part of the sign up process, Mt. Gox required Greene to provide it with his personal information in exchange for an agreement with Mt. Gox to be able to quickly and securely trade bitcoins.

32.    As such, Greene paid Mt. Gox transaction fees, in part, to be able to buy, sell, trade, and withdraw bitcoins, and also, in part, to maintain and protect his bitcoins and Fiat Currency in compliance with industry standards.

33.    Had Greene known of Mt. Gox's substandard security procedures that left his bitcoins vulnerable to theft, he would have paid substantially less for Mt. Gox's services or would not have paid at all.

34.    Additionally, because Mt. Gox prohibited withdrawals and eventually shut down

**EXHIBIT W**

trading completely, Plaintiff was unable to (1) withdraw his bitcoins and/or Fiat Currency and (2) was unable to sell his bitcoins in the rapidly falling market resulting from Defendants' conduct.

35.     Because Mt. Gox did not sufficiently protect its service, including Greene's bitcoins, Greene did not receive the entirety of the services he paid for, and as a result, he paid more than he otherwise would have for such services.

36.     Worse yet, at the time Mt. Gox shut down, Greene had used Mt. Gox's services to store and protect bitcoins with a present value of approximately $25,000 dollars. Despite his repeated attempts, Greene has been unable to withdraw his money from Mt. Gox since early February 2014. Prior to February 7, 2014, Plaintiff's bitcoins had a market value of nearly double their value following Mt. Gox's prohibition on withdrawals and eventual shutdown, which undeniably caused a sharp decline in the market value of bitcoins.

## CLASS ALLEGATIONS

37.     **Class Definition**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3) on behalf of himself and a class of similarly situated individuals, defined as follows:

> **Payment Class**: All persons in the United States who paid a fee to Mt. Gox to buy, sell, or otherwise trade bitcoins.

Additionally, Plaintiff Greene brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3) on behalf of himself and a second class of similarly situated individuals, defined as follows:

> **Frozen Currency Class**: All persons in the United States who had bitcoins or Fiat Currency stored with Mt. Gox on February 7, 2014.

Excluded from the Payment Class and Frozen Currency Class (collectively, the

**EXHIBIT W**

"Classes") are (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current and former employees, officers, and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) persons who execute and file a timely request for exclusion, (4) all persons who have previously had claims similar to those alleged herein finally adjudicated or who have released their claims against Defendants, and (5) the legal representatives, successors, or assigns of any such excluded person.

38.    **Numerosity**: The exact number of the members of the Classes is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, there are hundreds of thousands of persons in the Classes. Members of the Classes can be identified through Defendants' records and ascertained by reference to objective criteria.

39.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the members of the putative Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to, the following:

(a)    whether Mt. Gox adequately safeguarded Plaintiff's and the members of the Classes' bitcoins and Fiat Currency;

(b)    whether Mt. Gox breached its duty to protect Plaintiff's and the Classes' bitcoins and Fiat Currency;

(c)    whether implied or express contracts existed between Mt. Gox, on the one hand, and Plaintiff and the members of the putative Classes on the other;

**EXHIBIT W**

(d)    whether Mt. Gox's conduct described herein constitutes consumer fraud;

(e)    whether Mt. Gox's conduct constitutes fraudulent inducement;

(f)    whether Mt. Gox's conduct constitutes negligence;

(g)    whether Mr. Gox's conduct constitutes a breach of fiduciary duty;

(h)    whether Mt. Gox's conduct described herein constitutes a breach of contract;

(i)    whether Mt. Gox should retain the monies paid by Plaintiff and the putative Classes;

(j)    whether a temporary restraining order and/or preliminary injunction is appropriate and necessary;

(k)    whether a permanent injunction is appropriate and necessary;

(l)    whether an accounting is appropriate and necessary;

(m)    whether Defendants' conduct constitutes trespass to chattels;

(n)    whether Defendants' conduct constitutes conversion; and

(o)    whether Plaintiff and the putative Classes' are entitled to such further relief requested herein, among other common legal and factual questions.

40.    **Typicality**: Plaintiff's claims are typical of the claims of other members of the Classes in that Plaintiff and the members of the Classes suffered substantially similar injuries arising out of Mt. Gox's uniform wrongful conduct.

41.    **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Classes, and Mt. Gox has no defenses unique to Plaintiff.

**EXHIBIT W**

42.     **Policies Generally Applicable to the Classes**: This class action is appropriate for certification under Rule 23(b)(2) because Mt. Gox has acted or refused to act on grounds generally applicable to the Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final injunctive relief appropriate with respect to the Classes as a whole. Mt. Gox's policies challenged herein apply and affect members of the Classes uniformly and Plaintiff's challenge of these policies hinges on Mt. Gox's conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff. Specifically, the factual and legal bases of Mt. Gox's liability to Plaintiff and to the other members of the Classes are the same, resulting in injury to the Plaintiff and to all of the other members of the Classes. Plaintiff and the members of the Classes have suffered harm and damages as a result of Mt. Gox's unlawful and wrongful conduct.

43.     **Superiority and Manageability**: This case is also appropriate for class certification under Rule 23(b)(3) because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Mt. Gox's actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Mt. Gox's misconduct. Even if members of the Classes could sustain such individual litigation it would still not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of

13

**EXHIBIT W**

single adjudication, economies of scale, and comprehensive supervision by a single Court.
Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

## FIRST CAUSE OF ACTION
### Consumer Fraud
### (On behalf of Plaintiff and the Classes)

44.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

45.     As described herein, Mt. Gox has engaged in unlawful, deceptive, and unfair
conduct that is immoral, unscrupulous, and causes substantial injury to consumers.

46.     Through its online marketing materials and advertisements, Mt. Gox represented
to Plaintiff and the Classes that it would, *inter alia*, protect their bitcoins and Fiat Currency and
safely and quickly allow them to buy, sell, trade, or withdraw the same at any time.

47.     Mt. Gox's promises and representations made on its website and in its associated
promotional materials with respect to its utility, privacy, security, and availability were, in fact,
false. Mt. Gox did not adequately safeguard its exchange or its users' bitcoins and Fiat Currency
nor did Mt. Gox safely and quickly allow Plaintiff and the members of the Classes to buy, sell,
and otherwise trade the same at any time.

48.     Thus, Mt. Gox's representations to Plaintiff and the members of the Classes were
false and Mt. Gox knew they were false.

49.     Knowing that consumers are less likely to do business with companies that fail to
adequately safeguard their bitcoins and Fiat Currency or allow them to buy, sell, trade, or
withdraw the same at any time, Mt. Gox made the false representations with the intention that
Plaintiff and the members of the Classes' would rely on them in contracting with Mt. Gox.

50.     Because ordinary consumers lacked access to Mt. Gox's proprietary information
regarding its true business policies, practices and procedures prior to February 2014, Mt. Gox's

14

**EXHIBIT W**

representations were likely to deceive consumers who had no other resource for assessing Mt. Gox's services.

51.     Had Mt. Gox disclosed its true practices, Plaintiff and the Payment Class would have paid substantially less for Mt. Gox's services or would not have paid at all (*i.e.*, the value of Mt. Gox's exchange services *without* adequate protections and the ability to access funds at any time is worth substantially less than the value of such services *with* adequate protection and the ability to access funds or trade at any time). Because Plaintiff and the Payment Class paid, in part, for Mt. Gox to protect their bitcoins and Fiat Currency in compliance with industry standards and allow them to access funds at any time, Plaintiff and the Payment Class did not receive the services for which they paid.

52.     Further, Mt. Gox's deceptive conduct caused Plaintiff and the members of the Frozen Currency Class monetary damages because, but for Mt. Gox's unlawful conduct, they would be able to withdraw their bitcoins or Fiat Currency, which are worth millions of United States Dollars.

53.     Accordingly, Mt. Gox's false representations constituted deceptive conduct.

54.     Mt. Gox's failures to comply with its security and privacy promises and obligations were also unlawful conduct.

55.     Mt. Gox's conduct also constitutes unfair conduct because it caused substantial injury to Plaintiff and the members of the Classes that was not offset by countervailing benefits to consumers or competition and is not reasonably avoidable by consumers.

56.     Mt. Gox's inadequate security measures and false representations caused substantial injury to Plaintiff and the members of the Payment Class because Plaintiff and the Payment Class would have paid substantially less for Mt. Gox's services or would have not paid

**EXHIBIT W**

at all but for Mt. Gox's deception. Further, Mt. Gox's unlawful conduct caused the Frozen Currency Class to suffer actual harm in the form of lost, stolen, or inaccessible bitcoins or Fiat Currency.

57.     Plaintiff and the putative members of the Frozen Currency Class also experienced harm in that they were unable to withdraw their Fiat Currency or bitcoins while the market fell as a result of Defendants' conduct. Additionally, Plaintiff's and other members of the Frozen Currency Class's bitcoins lost significant value between February 7, 2014 and the present as the price of bitcoins on the Mt. Gox exchange plummeted.

58.     The harm suffered by Plaintiff and the Classes was not reasonably foreseeable to them because they lacked firsthand knowledge of Mt. Gox's security measures and other business practices given Mt. Gox's false public representations regarding the same.

59.     Mt. Gox's deceptive, unlawful, and unfair conduct occurred in the course of consumers contracting for the exchange of currency and therefore occurred in the course of conduct involving trade and commerce.

60.     In sum, Mt. Gox's deceptive, unlawful, and unfair conduct caused Plaintiff and the Classes monetary damages. Plaintiff and the Payment Class would have paid substantially less for Mt. Gox's services or would have not paid at all had they known that Mt. Gox would protect their bitcoins and make them readily available in derogation of its representations. Likewise, Plaintiff and the Frozen Currency Class would not have lost bitcoins and Fiat Currency, and lost significant value in their bitcoins that they were unable to sell, but for Mt. Gox's unlawful, deceptive, and unfair conduct.

61.     Accordingly, Plaintiff seeks an order (i) preliminarily and permanently enjoining Mt. Gox from continuing to engage in unfair and fraudulent conduct, (ii) requiring Mt. Gox to

**EXHIBIT W**

make full restitution of all funds wrongfully obtained, and (ii) awarding punitive damages, costs, and reasonable attorneys' fees to Plaintiff and the Classes.

**SECOND CAUSE OF ACTION**
**Fraud in the Inducement**
**(On Behalf of Plaintiff and the Classes)**

62.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

63.     Mt. Gox misrepresented and/or failed to disclose material provisions of the sale of its Bitcoin exchange services.

64.     Through the misrepresentations and omissions detailed herein, Mt. Gox wrongfully induced Plaintiff and the Classes to purchase its services and provide it with Fiat Currency and bitcoins. These representations included statements on Defendants' website indicating that the Mt. Gox exchange was safe and secure, and that users' would be able to freely deposit and withdraw Fiat Currency and bitcoins at any time.

65.     Defendant knew or should have known that its misstatements and omissions regarding the terms of the sale of its services were misleading to Plaintiff and the Classes.

66.      Defendant intended that consumers rely upon its misstatements and omissions regarding the sale of its services.

67.     In deceiving Plaintiff and members of the Classes regarding the full terms of the sale of its services, Mt. Gox has engaged in fraudulent practices designed to induce consumers to sign up for and use its services.

68.     Defendants together participated in a fraudulent scheme to defraud consumers. Specifically, Defendants made numerous false statements and broke numerous affirmative promises, including but not limited to the quality of its security procedures, users' ability to withdraw bitcoins and Fiat Currency, and the accessibility and ownership of the bitcoins and Fiat

**EXHIBIT W**

Currency held by Defendants. Moreover, Defendants perpetrated a fraudulent scheme by halting user withdrawals, representing that the prohibition was only temporary, allowing users to continue to trade (and therefore profited from transaction fees), and thereafter never lifted the withdrawal prohibition and shut down he entire exchange.

69. As a proximate result of Mt. Gox's violations of law and wrongful conduct alleged herein, Plaintiff and the Classes have suffered actual harm. Plaintiff and the Payment Class suffered economic injury and other damages, including in the amount of the difference between the price they paid for Mt. Gox's services as promised and the actual diminished value of its services. Further, Plaintiff and the Frozen Currency Class have suffered damages in the form of the price of the bitcoins and Fiat Currency that were stolen, lost, or misused by Mt. Gox, and the loss of value in those bitcoins that they were prohibited from selling.

70. Accordingly, Plaintiff seeks an order (i) preliminarily and permanently enjoining Mt. Gox from continuing to engage in unfair and fraudulent conduct, (ii) requiring Mt. Gox to pay damages and make full restitution of all funds wrongfully obtained, charged, or held, and (ii) awarding punitive damages to Plaintiff and the Classes plus costs.

### THIRD CAUSE OF ACTION
**Negligence**
**(On behalf of Plaintiff and the Classes)**

71. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

72. Mt. Gox requested and came into possession of Plaintiff's and the Classes' bitcoins and Fiat Currency and had a duty to exercise reasonable care in safeguarding and protecting such information from being accessed, stolen, or otherwise harmed. Mt. Gox's duty arose from the legal and industry standards discussed above and its financial relationship with Plaintiff's and the Classes.

18

**EXHIBIT W**

73.     Mt. Gox had a duty to employ procedures to detect and prevent the improper access and misuse of Plaintiff's and the Classes' bitcoins and Fiat Currency and also to allow them complete access to the same. The breach of security, unauthorized access, freezing of their accounts, and resulting injury to the Plaintiff and the Classes were reasonably foreseeable, particularly in light of Mt. Gox's inadequate data management and security system.

74.     Mt. Gox, through its actions and/or omissions, unlawfully breached its duty to the Plaintiff and the Classes by failing to implement industry-standard protocols and exercise reasonable care in light of foreseeable risks in maintaining, protecting and safeguarding the Plaintiff's and the Classes' bitcoins and Fiat Currency within Mt. Gox's control.

75.     Mt. Gox, through its actions and/or omissions, breached its duty to Plaintiff and the Classes by failing to have procedures in place to detect and prevent access to Plaintiff's and the Classes' bitcoins and Fiat Currency.

76.     But for Mt. Gox's breach of its duties, Plaintiff's and the Classes' bitcoins and Fiat Currency would not have been compromised and/or frozen. The Plaintiff's and Classes' bitcoins and Fiat Currency were accessed, frozen, converted, and/or misused as the proximate result of Mt. Gox's failure to exercise reasonable care in safeguarding such information by adopting, implementing, and maintaining appropriate data management and security measures. Additionally, Plaintiff and members' of the Frozen Currency Class lost significant value in their bitcoins as a result of being unable to access or sell them.

77.     As a result of Mt. Gox's conduct, Plaintiff and the Payment Class suffered economic injury and other damages, including without limitation the amount of the difference between the price they paid for Mt. Gox's services as promised and the actual diminished value of its services. Further, Plaintiff and the Frozen Currency Class have suffered damages in the

**EXHIBIT W**

form of the price of the bitcoins and Fiat Currency that were stolen, lost, or misused by Mt. Gox.

78.    Accordingly, Plaintiff seeks an order requiring Mt. Gox to pay damages in amounts to be proven at trial plus costs of this suit.

**FOURTH CAUSE OF ACTION**
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiff and the Classes)**

79.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

80.    As guardians of the Plaintiff's and the Classes' bitcoins, Mt. Gox owed a fiduciary duty to Plaintiff and the Classes to protect their bitcoins and Fiat Currency and maintain complete and accurate records of how its users' bitcoins and Fiat Currency were purchased, sold, and withdrawn. Defendants likewise owed a fiduciary duty to Plaintiff and the Classes to allow access to their Fiat Currency and bitcoins held on the Mt. Gox exchange.

81.    Mt. Gox breached its fiduciary duty to the Plaintiff and the Classes by: (i) failing to adequately safeguard its users bitcoins and Fiat Currency, and (ii) to allow them to safely and quickly buy, sell, trade, or withdraw the same. Mt. Gox did not honor any of these obligations.

82.    As a result of Mt. Gox's breaches, the Plaintiff and the Classes have suffered actual harm. Plaintiff and the Payment Class suffered economic injury and other damages, including, without limitation, the amount of the difference between the price they paid for Mt. Gox's services as promised and the actual diminished value of its services. Further, Plaintiff and the Frozen Currency Class have suffered damages in the form of the price of the bitcoins and Fiat Currency that were stolen, lost, or misused by Mt. Gox. Members of the Classes have also suffered damages in the amounts of fees paid to Mt. Gox in exchange for its faithful execution of its fiduciary obligations.

83.    Accordingly, Plaintiff seeks an order (i) preliminarily and permanently enjoining

20

**EXHIBIT W**

Mt. Gox from continuing to engage in unfair and fraudulent conduct, (ii) requiring Mt. Gox to make full restitution of all funds wrongfully obtained, held or charged, and (ii) awarding punitive damages, costs, and reasonable attorneys' fees to Plaintiff and the Classes.

### FIFTH CAUSE OF ACTION
**Breach of Contract**
**(On behalf of Plaintiff and the Classes)**

84.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

85.     Plaintiff and the Classes entered into valid and enforceable agreements with Mt. Gox whereby Mt. Gox promised to provide services to Plaintiff and the Classes, and Plaintiff and the Classes agreed to pay money for such services.

86.     As a material part of Mt. Gox's form contracts with the members of the Classes, Mt. Gox promised Plaintiff and the Classes that it would adequately protect their bitcoins and Fiat Currency and would allow them to safely and quickly buy, sell, trade, or withdraw the same.

87.     Based on the foregoing offers and representations, Plaintiff and the Classes agreed to sign up for Mt. Gox's services and trade bitcoins and Fiat Currency using the same. Further, Plaintiff and the Frozen Currency Class agreed to store and maintain bitcoins and Fiat Currency on Mt. Gox's website. As such, Plaintiff and the Classes performed their obligations under the contracts.

88.     Mt. Gox breached its contracts with Plaintiff and the Payment Class by failing to safely and adequately protect their bitcoins and Fiat Currency. Mt. Gox further breached its contracts with Plaintiff and the Frozen Currency Class by unlawfully retaining, losing, or misusing their bitcoins and Fiat Currency and by failing to provide them with access to their bitcoins and currency stored on Mt. Gox at any time.

89.     Likewise, Illinois contract law recognizes the implied covenant of good faith and

**EXHIBIT W**

fair dealing in every contract. Thus, implicit in its contracts with Plaintiff and the Classes were provisions prohibiting Mt. Gox from engaging in conduct that frustrated Plaintiff's and the Classes' abilities to receive the benefits of their agreements.

90.     Mt. Gox acted in bad faith and breached these provisions of the agreement specifically by not honoring its responsibilities to adequately safeguard its users bitcoins and Fiat Currency, by unlawfully retaining, losing, or misusing the same, and by failing to provide its users with access to their bitcoins and money stored on Mt. Gox at any time.

91.     Furthermore, Mt. Gox was under an implicit obligation to be truthful in its advertisements, and to adequately safeguard its users bitcoins and Fiat Currency and to allow them to safely and quickly buy, sell, trade, or withdraw the same at any time. Mt. Gox did not honor any of these obligations.

92.     Mt. Gox breached the implied covenant of good faith and fair dealing by: (i) failing to adequately safeguard its users bitcoins and Fiat Currency, (ii) unlawfully retaining, losing, or misusing their bitcoins and Fiat Currency, (iii) denying users access to Mt. Gox at any time, and (iv) by failing to fully comply with the proscriptions of applicable law.

93.     The aforementioned breaches of contract have directly and proximately caused Plaintiff and the Payment Class economic injury and other damages, including in the amount of the difference between the price they paid for Mt. Gox's services as promised and the actual diminished value of its services. Further, Plaintiff and the Frozen Currency Class have suffered damages in the form of the price of the bitcoins and Fiat Currency that were stolen, lost, or misused by Mt. Gox.

94.     Accordingly, Plaintiff seeks an order (i) preliminarily and permanently enjoining Mt. Gox from continuing to engage in unfair and fraudulent conduct, (ii) requiring Mt. Gox to

**EXHIBIT W**

pay damages in amounts to be proven at trial, and (ii) awarding Plaintiff costs and reasonable attorneys fees.

### SIXTH CAUSE OF ACTION
**Unjust Enrichment/Restitution**
**(in the alternative to Count V)**
**(On Behalf of Plaintiff and the Classes)**

95.     Plaintiff incorporates the foregoing allegations as if fully set forth herein, excluding paragraphs 84 to 94.

96.     If the Court finds Plaintiff's and the Classes' contracts with Mt. Gox invalid, non-existent, or otherwise unenforceable, Plaintiff and the Classes may be left without any adequate remedy at law.

97.     Plaintiff and the Payment Class conferred monetary benefits on Mt. Gox in the form of fees paid for its services.

98.     Mt. Gox appreciated or had knowledge of the benefits conferred upon it by Plaintiff and the Payment Class.

99.     The fees for services that Plaintiff and the Payment Class paid to Mt. Gox were supposed to be used by Mt. Gox, in part, to pay for the administrative costs of bitcoin management and security and to keep the exchange operating.

100.    Under principles of equity and good conscience, Mt. Gox should not be permitted to retain the money belonging to Plaintiff and the Payment Class because Mt. Gox failed to implement adequate bitcoin management and security measures that Plaintiff and the Payment Class paid for and are otherwise entitled to by industry standards.

101.    Moreover, Plaintiff and the Frozen Currency Class conferred a monetary benefit on Mt. Gox in the form of actual bitcoins and Fiat Currency and transaction fees.

102.    Mt. Gox appreciated or had knowledge of the benefits conferred upon it by

**EXHIBIT W**

Plaintiff and the Frozen Currency Class.

103.    The bitcoins and Fiat Currency that Plaintiff and the Frozen Currency Class provided to Mt. Gox were supposed to be released back or made available to Plaintiff and the Frozen Currency Class.

104.    Under principles of equity and good conscience, Mt. Gox should not be permitted to retain the money belonging to Plaintiff and the Frozen Currency Class.

105.    Accordingly, as a result of Mt. Gox's conduct, Plaintiff and the Payment Class suffered economic injury and other damages, including in the amount of the difference between the price they paid for Mt. Gox's services as promised and the actual diminished value of its services. Further, Plaintiff and the Frozen Currency Class have suffered damages in the form of the price of the bitcoins and Fiat Currency that were stolen, lost, or misused by Mt. Gox.

106.    Accordingly, Plaintiff seeks an order (i) preliminarily and permanently enjoining Mt. Gox from continuing to engage in unfair and fraudulent conduct, (ii) requiring Mt. Gox to make full restitution of all funds wrongfully obtained, and (ii) awarding punitive damages to Plaintiff and the Classes plus costs of the lawsuit.

## SEVENTH CAUSE OF ACTION
### Temporary Restraining Order/ Preliminary Injunction
### (On Behalf of Plaintiff and the Frozen Currency Class)

107.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

108.    Plaintiff and the Frozen Currency Class conferred a monetary benefit on Mt. Gox in the form of actual bitcoins and Fiat Currency and fees.

109.    Mt. Gox appreciated or had knowledge of the benefits conferred upon it by Plaintiff and the Frozen Currency Class.

110.    On February 7, 2014, Mt. Gox halted all withdrawals from its website and

**EXHIBIT W**

subsequently shut down its service. As a result, Plaintiff and the Frozen Currency Class cannot access, withdraw, or cash out their bitcoins or Fiat Currency.

111.    The bitcoins and Fiat Currency that Plaintiff and the Frozen Currency Class provided to Mt. Gox were supposed to be released back to Plaintiff and the Frozen Currency Class.

112.    Plaintiff and the Frozen Currency Class will suffer irreparable harm if Mt. Gox retains the bitcoins and Fiat Currency belonging to Plaintiff and the Frozen Currency Class.

113.    Plaintiff and the Frozen Currency Class have no adequate remedy at law since they have no other means of accessing, withdrawing, or cashing out their bitcoins or Fiat Currency. Furthermore, media reports suggest that Mt. Gox may become insolvent or dissipate any remaining assets.

114.    Plaintiff and the Frozen Currency Class will likely succeed on the merits, because Mt. Gox unlawfully misused or misappropriated Plaintiff's and the Frozen Currency Class's bitcoins and Fiat Currency and continues to exercise control over their property.

115.    Accordingly, Plaintiff seeks an order (i) temporarily restraining and preliminarily enjoining Mt. Gox from continuing to deny Plaintiff and the members of the Frozen Currency Class access to their bitcoins and money, (ii) requiring Mt. Gox to immediately make full restitution of all funds wrongfully obtained, and (iii) awarding Plaintiff costs of the lawsuit.

### EIGHTH CAUSE OF ACTION
**Permanent Injunction**
**(On Behalf of Plaintiff and the Frozen Currency Class)**

116.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

117.    Plaintiff and the Frozen Currency Class conferred a monetary benefit on Mt. Gox in the form of actual bitcoins and Fiat Currency.

**EXHIBIT W**

118.    Mt. Gox appreciated or had knowledge of the benefits conferred upon it by Plaintiff and the Frozen Currency Class.

119.    In early February 2014, Mt. Gox halted all withdrawals from its website and subsequently shut down its service. As a result, Plaintiff and the Frozen Currency Class cannot access, withdraw, or cash out their bitcoins or Fiat Currency.

120.    The bitcoins and Fiat Currency that Plaintiff and the Frozen Currency Class provided to Mt. Gox were supposed to be released back to Plaintiff and the Frozen Currency Class.

121.    Plaintiff and the Frozen Currency Class will suffer irreparable harm if Mt. Gox retains the bitcoins and Fiat Currency belonging to Plaintiff and the Frozen Currency Class. Furthermore, media reports suggest that Mt. Gox may become insolvent or dissipate any remaining assets.

122.    Plaintiff and the Frozen Currency Class have no adequate remedy at law since they have no other means of accessing, withdrawing, or cashing out their bitcoins or Fiat Currency.

123.    Plaintiff and the Frozen Currency Class will likely succeed on the merits, because Mt. Gox unlawfully misused or misappropriated Plaintiff's and the Frozen Currency Class's bitcoins and Fiat Currency.

124.    Accordingly, Plaintiff seeks an order (i) permanently enjoining Mt. Gox from continuing to deny Plaintiff and the members of the Frozen Currency Class access to their bitcoins and money, (ii) requiring Mt. Gox to immediately make full restitution of all funds wrongfully obtained, and (iii) awarding Plaintiff costs of the lawsuit.

**EXHIBIT W**

**NINTH CAUSE OF ACTION**
**Trespass to Chattels**
**(On Behalf of Plaintiff and the Frozen Currency Class)**

125.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

126.    Plaintiff and the Frozen Currency Class transferred, maintained, and stored actual bitcoins and Fiat Currency on Mt. Gox's exchange.

127.    Plaintiff's and the Frozen Currency Class's bitcoins and Fiat Currency are protected property interests.

128.    Mt. Gox intentionally and/or negligently, and without authorization or consent, gained accessed to Plaintiff's and the Frozen Currency Class's bitcoins and Fiat Currency, used Plaintiff's and the Frozen Currency Class's bitcoins and Fiat Currency, exercised control, dominion or ownership of Plaintiff's and the Frozen Currency Class's bitcoins and Fiat Currency, and/or dispossessed of Plaintiff's and the Frozen Currency Class's bitcoins and Fiat Currency.

129.    In doing so, Mt. Gox intentionally and/or negligently intermeddled with, damaged, and/or deprived Plaintiff and the other members of the Frozen Currency Class of the use of their bitcoins and Fiat Currency.

130.    As a result of Mt. Gox's interference with Plaintiff's and the other Frozen Currency Class's use of their bitcoins and Fiat Currency, Plaintiff and the other members of the Frozen Currency Class have suffered, and will continue to suffer, damages, including in the form of diminished value of their bitcoins.

131.    Accordingly, Plaintiff seeks an order (i) enjoining Mt. Gox from continuing to deny Plaintiff and the members of the Frozen Currency Class access to their bitcoins and money, (ii) requiring Mt. Gox to pay damages and immediately make full restitution of all funds

**EXHIBIT W**

wrongfully obtained, and (ii) awarding Plaintiff costs of the lawsuit.

**TENTH CAUSE OF ACTION**
**Conversion**
**(On Behalf of Plaintiff and the Frozen Currency Class)**

132.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

133.    Plaintiff and the Frozen Currency Class transferred, maintained, and stored actual

bitcoins and Fiat Currency on Mt. Gox's exchange.

134.    Plaintiff's and the Frozen Currency Class's bitcoins and Fiat Currency are

protected property interests.

135.    Mt. Gox intentionally and without authorization or consent gained accessed to

Plaintiff's and the Frozen Currency Class's bitcoins and Fiat Currency, used Plaintiff's and the

Frozen Currency Class's bitcoins and Fiat Currency, exercised control, dominion or ownership

of Plaintiff's and the Frozen Currency Class's bitcoins and Fiat Currency, and/or dispossessed of

Plaintiff's and the Frozen Currency Class's bitcoins and Fiat Currency.

136.    In doing so, Mt. Gox intentionally intermeddled with, damaged, and/or deprived

Plaintiff and the other members of the Frozen Currency Class of the use of their bitcoins and Fiat

Currency.

137.    As a result of Mt. Gox's interference with Plaintiff's and the other Frozen

Currency Class's use of their bitcoins and Fiat Currency, Plaintiff and the other members of the

Frozen Currency Class have suffered, and will continue to suffer, damages, including in the form

of diminished value of their bitcoins.

138.    Accordingly, Plaintiff seeks an order (i) enjoining Mt. Gox from continuing to

deny Plaintiff and the members of the Frozen Currency Class access to their bitcoins and money,

(ii) requiring Mt. Gox to pay damages and immediately make full restitution of all funds

**EXHIBIT W**

wrongfully obtained, and (ii) awarding Plaintiff costs of the lawsuit.

## ELEVENTH CAUSE OF ACTION
### Accounting
### (On Behalf of Plaintiff and the Frozen Currency Class)

139.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

140.    Plaintiff and the Frozen Currency Class conferred a monetary benefit on Mt. Gox in the form of actual bitcoins and Fiat Currency.

141.    Mt. Gox appreciated or had knowledge of the benefits conferred upon it by Plaintiff and the Frozen Currency Class.

142.    In early February 2014, Mt. Gox halted all withdrawals from its website and subsequently shut down its service. As a result, Plaintiff and the Frozen Currency Class cannot access, withdraw, or cash out their bitcoins or Fiat Currency.

143.    Because all transaction records relating to the purchase, sale, trade, and withdrawal of Plaintiff's and the Frozen Currency Class's bitcoins and Fiat Currency are exclusively within the control of Mt. Gox, Plaintiff and the Frozen Currency Class have an inadequate legal remedy in that it cannot determine the precise amount of damage that it has suffered as a result of Mt. Gox's conduct, including its breaches of fiduciary duty.

144.    As a result, Plaintiff and the Frozen Currency Class seek an order requiring Mt. Gox to provide a full and complete accounting of all transactions or records relating to the purchase, sale, trade, withdrawal, disbursement, theft, or dissipation of Plaintiff's and the Frozen Currency Class's bitcoins or Fiat Currency plus costs of the lawsuit.

## TWELFTH CAUSE OF ACTION
### Constructive Trust
### (On Behalf of Plaintiff and the Frozen Currency Class)

145.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

**EXHIBIT W**

146.     Plaintiff and the Frozen Currency Class conferred a monetary benefit on Mt. Gox in the form of actual bitcoins and Fiat Currency.

147.     Mt. Gox appreciated or had knowledge of the benefits conferred upon it by Plaintiff and the Frozen Currency Class.

148.     In early February 2014, Mt. Gox halted all withdrawals from its website and subsequently shut down its service. As a result, Plaintiff and the Frozen Currency Class cannot access, withdraw, or cash out their bitcoins or Fiat Currency.

149.     As a result, and with respect to Plaintiff's claims for equitable relief described herein, each of which is made in the alternative to Plaintiff's claims for money damages, Plaintiff and the Frozen Currency Class seek the imposition of a constructive trust on all of their bitcoins or Fiat Currency within Mt. Gox's possession, custody, or control. Such bitcoins or Fiat Currency are the property of the members of the Frozen Currency Class and they have an equitable interest in such property.

150.     Mt. Gox intentionally and/or negligently, and without authorization or consent, gained possession, custody or control of Plaintiff's and the Frozen Currency Class's bitcoins and Fiat Currency and has denied Plaintiff and the members of the Frozen Currency Class the ability to access their property.

151.     The imposition of a constructive trust on Plaintiff's and the Frozen Currency Class's bitcoins and Fiat Currency is warranted given Mt. Gox's unlawful conduct described above.

152.     Plaintiff and the members of the Frozen Currency Class have no other adequate remedy at law.

153.     Plaintiff and the members of the Frozen Currency Class are likely to suffer

**EXHIBIT W**

irreparable harm as they have no alternative means for accessing their bitcoins or Fiat Currency and media reports suggest that Mt. Gox may be insolvent or dissipating its remaining assets.

154.    Accordingly, Plaintiff seeks an order (i) imposing a constructive trust over the bitcoins and Fiat Currency currently held by Mt. Gox and belonging to the Plaintiff and the members of the Frozen Currency Class, (ii) appointing Mt. Gox as trustee of the constructive trust for the sole purpose of returning the all of the members of the Frozen Currency Class's bitcoins and Fiat Currency to the members of the Frozen Currency Class, and (iii) awarding Plaintiff costs for the lawsuit.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Gregory Greene, individually and on behalf of the Classes, prays for the following relief:

(a)    An order certifying the Classes as defined above, appointing Plaintiff Greene as the representative of the Classes, and appointing his counsel as Class Counsel;

(b)    An award of actual and statutory damages;

(c)    An award of injunctive, statutory and/or declaratory relief as necessary to cease Mt. Gox's unlawful conduct as described herein;

(d)    An award of restitution for Mt. Gox's wrongful conduct;

(e)    An accounting;

(f)    The imposition of a constructive trust;

(e)    An award of reasonable attorneys' fees and costs; and

(f)    Such other and further relief that the Court deems equitable, reasonable, and just.

**EXHIBIT W**

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

**GREGORY GREENE**, individually and on behalf of all others similarly situated,

Dated: February 27, 2014

By: /s/ Christopher L. Dore
One of Plaintiff's Attorneys

Steven L. Woodrow
swoodrow@edelson.com
Megan Lindsey
mlindsey@edelson.com
EDELSON PC
999 West 18th Street, Suite 3000
Denver, Colorado 80202
Tel: 303.357.4878
Fax: 303.446.9111

Jay Edelson
jedelson@edelson.com
Christopher L. Dore
cdore@edelson.com
David I. Mindell
dmindell@edelson.com
Alicia Hwang
ahwang@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Counsel for Plaintiff Greene and the Putative Classes*

**EXHIBIT W**